BYRNES, Chief Judge.
Defendant, Harborview Enterprises, Inc. d/b/a Anberjacks Down Under (“Har-borview”) appeals the judgment in favor of the plaintiff, Vignette Publications, Inc. (“Vignette”) for breach of contract. We affirm.
On April 24, 1996 Harborview’s CEO/manager/owner, Dennis Scheuer- *533 mann, signed a written contract with Vignette for an advertisement to appear in the 1996 Second Edition of the New Orleans Vignette: The Guide to New Orleans, a hardback tourist magazine placed in hotel rooms throughout New Orleans. The contract was for an ad in the magazine for one year at the price of $6,000.00. The contract required a $500 deposit, with 11 monthly payments of $500 each. An ad ran for one year.
Harborview asserts that although the first monthly installment of the bill was due in August 1996, Vignette did not issue a statement to Harborview until eight months later for the monthly installments due. When Vignette made a demand on Harborview to pay for the ad, Harborview refused to remit payment. Vignette filed a petition on open account in Orleans First City Court on June 27, 1997, to enforce lathe written advertisement agreement. After a bench trial on March 29, 2000, the First City Court rendered judgment in favor of Vignette for $13,725.90 with interest thereon at the rate of 1.9 percent per month on March 30, 2000. The First City Court also awarded an additional 25 percent of the amount of principal and interest due plus court costs in the amount of $444.75. The 25 percent was the equivalent to an award for attorney’s fees. The contract provided that the advertiser (Har-borview) agreed to pay attorney’s fees “of at least but not limited to 25 % of the unpaid balance, including any delinquency assessments.” The First City Court denied Harborview’s motion for new trial after a hearing on May 12, 2000, concerning the award of interest. Harborview’s appeal followed.
On appeal, Harborview contends that: (1) Vignette did not provide sufficient evidence to establish that Harborview approved and authorized the advertisement; (2) Vignette was not entitled to interest on accrued interest under the written advertising contract; and (3) the award for attorney’s fees was excessive.

Sufficiency of Evidence

Harborview argues that Vignette did not show by a preponderance that the advertisement was approved by Harborview.
The standard for determining the sufficiency of the evidence relates to questions of law or to mixed questions of law and fact. Harborview asserts that the manifest error rule is not the standard for determining the sufficiency of evidence underAmbrose v. New Orleans Police Depart. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, and Rosell v. ESCO, 549 So.2d 840 (La.1989).
|sIn his concurrence in Ambrose, Justice Lemmon explained:
The manifest error rule is a standard used by appellate courts to resolve conflicting factual evidence; it is not a standard for determining sufficiency of the evidence. The manifest error rule relates purely to questions of fact; sufficiency of the evidence, on the other hand, is a question of law, and the standard for determining sufficiency of the evidence relates to questions of law, or to mixed questions of law and fact.
In application, the manifest error rule becomes part of the standard for determining sufficiency of the evidence. The reviewing court first resolves any factual conflicts by application of the manifest error rule which dictates that the appellate court should not disturb the express or implied factual findings of the trier of fact. [Footnote omitted.] Accordingly, the reviewing court views all evidence in the light most favorable to the party who prevailed in the trial court, and then determines whether the evidence, consisting of the undisputed facts and of the disputed facts thus viewed under the *534 manifest error rules, was sufficient to preponderate in favor of a conclusion that the plaintiff had proved every element of his cause of action. [Emphasis added.]
Id. 639 So.2d at 223-24.
Rosell v. ESCO, supra, provides the same manifest error, clearly wrong standard of review of the credibility of witnesses and disputed facts.
In the present case, the parties provide conflicting testimony as to whether the advertiser, Harborview, approved the final copy before the advertisement was printed in Vignette’s hardback magazine. Where the facts are disputed, the manifest error standard applies.
The burden of proof in an action for breach of contract is on the party claiming rights under the contract. Phillips v. Insilco Sports Network, Inc., 429 So.2d 447, 449 (La.App. 4 Cir.1983). The existence of the contract and its terms must be proved by a preponderance of the evidence. Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993). A contract is formed by the consent of the parties established through an offer and acceptance; the offer and acceptance may be verbal unless the law prescribes the requirement of writing. State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144. The offer and acceptance, such as is required to support a contract, may be made orally, in writing, or through actions or inactions clearly indicative of consent. La. C.C. art. 1927; Mitchell v. Fradella, 628 So.2d 1198 (La.App. 3 Cir.1993). The trial judge is given discretion to determine if consent to an agreement may be implied from the particular circumstances of each case. McDermott, Inc. (Harvey Supply Div.) v. M-Elec. & Const. Co., Inc., 496 So.2d 1105 (La.App. 4 Cir.1986).
The written contract in the present ease did not set out the requirement of written pre-approval of the advertisement by Harborview. Vignette’s witnesses agreed that it was standard operating procedure that any advertisement in the magazine was subject to pre-approval by the advertiser. The parties’ stipulation acknowledged the contract and signatures, as well as the fact that photographs were taken. At issue is whether Vignette proved that Harborview’s agent saw and approved the final ad before its publication.
Scheuermann testified that he saw the first photographs but did not approve the photos and text to be used in the magazine. Harborview maintains that its manager, Scheuermann, would not have approved the ad because it reflected an emphasis on live entertainment and music, which were not presented by Harborview’s restaurant. The live entertainment and music were provided by Amberjacks, a nightclub operated by a separate business corporation. Harborview claims that the advertisement in the restaurant section of Vignette’s hardback magazine would have featured its seafood cuisine rather than an ad promoting live entertainment featured by its neighbor, Amberjacks nightclub.
I sIn the ad, the words “New Orleans Best Live Music” are emphasized. The restaurant is listed with one phone number and the lounge is listed with another phone number. The ad refers to the Lakefront Marina. One picture shows fish swimming and the other picture has a display of an array of food in various dishes. The wording in Vignette’s ad combines an advertisement for the restaurant and the lounge, just as the name “Amberjacks Down Under” combines the two businesses to appear as one establishment. Gayle Gelpi *535 Landrum testified that Scheuermann provided the “Amberjaeks Down Under” logo, and Harborview did not contest that testimony.
Harborview contends that Vignette’s editor and president, Andrew P. Calhoun, had no personal knowledge as to whether Harborview approved the final ad. Har-borview submits that Gayle Gelpi Land-rum, Vignette’s account executive handling the ad, did not remember a specific date of when Scheuermann approved the ad proof, and she had no specific independent recollection of Scheuermann’s approval.
In her deposition, Gayle Gelpi Landrum, Vignette’s agent, testified that she had a photo shoot at Amberjaeks Down Under which included pictures of the “underwater scene” in the lounge and various dishes cooked by the chef in the restaurant. As previously noted, Landrum related that Scheuermann provided the “Amberjaeks Down Under” logo. She stated that Scheuermann approved the ad, and Vignette ran the ad after he approved it. Landrum explained that she submitted the ad to Scheuermann, and the ad would not have run had he not approved it. Andrew Pete Calhoun, Vignette’s president, also testified that it was standard operating procedure to have the advertiser’s approval before an advertisement was printed in Vignette’s publication. While the ad appeared in 1 fiVignette’s publication for one year, Harborview did not protest that the advertisement was incorrect or defective.
Harborview maintains that Vignette did not bill Harborview for eight months until February 1997, although the contract provides that: “BALANCE DUE in 11 Monthly Payments of $500 each on the 1st of each month after publication.” This does not show that Harborview did not approve of Vignette’s advertisement. Both Harborview’s restaurant and Amber-jack’s lounge had the same address. Vignette introduced into evidence a memorandum from an employee “Trish” Polite, who noted that “Sally from Amberjaeks” called, demanding to know about a $500 invoice Amberjaeks received. Sally knew nothing about the contract or the bill, and Trish told Sally she would fax Sally a copy of the contract. Trish left Sally’s phone number and asked “John” [John Calhoun, son of Vignette’s president] to call Sally. Scheuermann stated that: “... the bill was sent to Amberjaeks and she [Sally] owns Amberjaeks. I own Harborview. I own the restaurant. I did not own Amber-jacks.” Scheuermann agreed that: “Yes, we did advertise together in other, other ventures and other things.”
During the discussion concerning the stipulations at the beginning of the trial, Harborview’s counsel stated that Harbor-view was doing business as “Amberjaeks Down Under.” The contract includes a line to be filled in after “Company Name.” The handwritten insert on that line provides: “Harborview Enterprises (Amber-jack’s).” [Emphasis added.] Gayle Gelpi Landrum testified that her handwriting appears in the contract except for Scheuermann’s signature. Scheuermann signed the contract without making a change to omit the insertion “(Amber-jack’s)” for the Company Name. Harbor-view’s claim that Vignette did |7not bill it for eight months does not show that the advertisement was not approved where the bills may have been sent to Amberjaeks at the same address.
The parties provided conflicting testimony. Gayle Gelpi Landrum and Andrew Pete Calhoun testified that the advertisement was approved by the advertiser, Harborview, because the ads were always approved before they were printed in Vignette’s publication. Dennis Scheuermann testified that he did not approve the final copy. Harborview did not complain about *536 the composition of the advertisement during the year it was published.
When asked if he paid all his bills promptly, Scheuermann answered, “yes.” For impeachment purposes, Vignette introduced into evidence a copy of a March 26, 1996 default judgment in favor of Lanier & Associates Consulting Engineers, Inc. against Harborview Enterprises for failure to pay the $385 bill. Corinne Evans testified that she was Senior Vice President of Sales of McMedia, a New Orleans Publishing Group. Evans related that Harbor-view was on its bad debt list. McMedia set a policy not to do business with Har-borview because it did not pay its past debts. On cross-examination, Evans clarified that Amberjacks may have been listed rather than Harborview on the bad debt list, but Evans thought Amberjacks and Harborview were the same.
Great deference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Where a factfinder’s finding is based on its decision to credit the testimony of one of two or more 1 Switnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra.
In the present ease, considering the conflicting testimony of the witnesses, the conclusion can be reached that the advertisement was approved by the advertiser, Harborview, before Vignette printed the ad in its publication. Based on a credibility call and the disputed facts in this case, the First City Court was not clearly wrong in determining that Harborview approved the advertisement and breached the contract by refusing to pay for the ad. Vignette provided sufficient evidence that it complied with the terms of the contract so as to commit the advertiser to pay for the advertisement that appeared in Vignette’s hardback magazine.

Interest

Harborview contends that the First City Court erred in computing the amount owed by including interest on interest. The judgment provides for $13,725.90 as the principal amount owed on the contract. This principal amount was calculated by Vignette by accruing interest on interest and adding this to the principal balance due, $6,000.00. Vignette charged the 1.9 percent monthly delinquency assessment not only on the principal amount owed under the contract, but also on the monthly accrued delinquency charges of 1.9 percent. The First City Court denied Har-borview’s motion for new trial, finding that Vignette was entitled to charge interest on interest under the advertising contract.
Generally, charging interest on interest is not favored and should not be awarded absent express legislative authority. Garlepied Transfer, Inc. v. Guaranty Bank and Trust Co., 96-383 (La.App. 5 Cir. 11/14/96), 685 So.2d 194. La. R.S. 9:3509 provides an exception to the prohibition of charging interest on interest for | (¡commercial, business or agricultural purposes. In commercial transactions, the parties may agree to the assessment of interest on accrued interest. The parties must agree to the contractual provisions for conventional interest and/or attorney’s fees. S.E. Hornsby & Sons Sand & Gravel Co., Inc., v. Checkmate Ready Mix Concrete, Inc., 390 So.2d 213 (La.App. 3 Cir.1980).
*537 The contract in the present case states in pertinent part:
A delinquency assessment of 1.9 % per month will be assessed against the amount outstanding. Upon failure of advertiser to pay as stipulated above, then at the option of Vignette Publications, Inc., the entire unpaid balance of this contract, including delinquency assessments, shall become payable.
Harborview asserts that the contract states that the delinquency assessment will be assessed against the “amount outstanding.” Harborview claims that the term “amount outstanding” is not defined in the contract and is ambiguous. Any unclear and ambiguous contract terms must be interpreted against the party who prepared the contract. La. C.C. art.2056; Potvin v. Wright’s Sound Gallery, Inc., 568 So.2d 623, 626 (La.App. 2 Cir.1990); Don-Barr Farms v. Pointe Coupee Farmers Elevator, Inc., 452 So.2d 360, 362 (La.App. 1 Cir.1984). Harborview maintains that the ambiguity should be interpreted against Vignette, the party that prepared and drafted the contract.
Words of a contract must be given their generally prevailing meaning. La. C.C. art.2047; Diefenthal v. Longue Vue Management Corp., 561 So.2d 44, 51 (La.1990); Bartlett Const. Co., Inc. v. St. Bernard-Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94, writ denied 2000-2322 (La.11/3/00), 773 So.2d 142. When words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the bnparties. La. C.C. art.2046; Lewis v. Hamilton, 94-2204 (La.4/10/95), 652 So.2d 1327. When absurd results are possible from a reading of a contract, it is ambiguous, and the courts must construe the provision in a manner consistent with the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art.2053; Doerr v. Mobil Oil Corp., 2000-0947 (La.12/19/00), 774 So.2d 119. Words of art and technical terms must be given their technical meaning when the contract involves technical matter and words susceptible of different meanings are to be interpreted as having a meaning that best conforms to the object of the contract. La. C.C. art.2047-2048; Id.
In the present case, the question is whether the delinquency assessment of 1.9 percent interest which is outlined in the contract is assessed against just the outstanding balance of $6,000 or whether a 1.9 percent interest assessment includes the previous month’s 1.9 percent. Vignette maintains that the last method is the way interest is calculated by any bank or lending institution. The interest accrues on any outstanding balance per month, including past interest. Harborview complains that Vignette’s petition praying for $7,238 with interest differs from the $13,725.90 with interest that Vignette asked for at the time of trial. Vignette submits that $7,238 with interest was due at the time Vignette filed the petition. The $13,725.90 represented the amount due with interest at the time of the trial.
The contract clearly states that: “A delinquency assessment of 1.9 % per month will be assessed against the amount outstanding [emphasis added].” Even if the contract were ambiguous, common usage in commercial or business activities would promote the charge of interest on interest. Considering that La. R.S. 9:3509 *538 is an exception allowing interest on interest in transactions entered Ininto for commercial, business, or agricultural purposes, and considering the common usage of the general procedure of charging interest on interest in business activities that include transactions of banking and lending institutions, the contract in the present case is for commercial and business purposes. The First City Court did not err in its determination to award an amount based on interest on interest.

Attorney’s Fees

Harborview maintains that the award of 25 percent attorney’s fees with interest is excessive, considering the minor amount of time expended on litigation, and the charge of interest on interest. As a general rule, attorney’s fees are not allowed except where authorized by statute or contract. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Pooler Bldg. Materials, Inc. v. Hogan, 244 So.2d 62 (La.App. 1 Cir.1971). A trial judge has much discretion in fixing attorney’s fees, and its award will not be modified by a reviewing court absent a showing of an abuse of discretion. Gravolet v. Board of Com’rs for Grand Prairie Levee Dist., 95-2477 (La.App. 4 Cir. 6/12/96), 676 So.2d 199. In State, Dept. of Transp. and Development v. Williamson, 597 So.2d 439, 441-442 (La.1992), the Louisiana Supreme Court stated:
Courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. [citations omitted] ... Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge, [footnote & citations omitted].
The contract in the present case states in pertinent part:
| ^.Should it be necessary to refer advertiser’s account to an attorney for collection, advertiser agrees to pay court cost plus attorney’s fees of at least but not limited to 25 % of the unpaid balance, including all delinquency assessments .... [Emphasis added.]
The First City Court had the discretion to award 25 percent with delinquency assessment as the least amount of attorney’s fees on the balance pursuant to the contract. The First City Court’s award of an additional 25 percent “of the amount of principal and interest due” is the equivalent of an award for attorney’s fees. The award complies with the contract and is reasonable. The First City Court did not abuse its discretion in its award of attorney’s fees and costs.
Accordingly, the judgment of the First City Court is affirmed.

AFFIRMED.