878 So.2d 900 (2004)
Ben S. GRAVOLET
v.
FAIR GROUNDS CORPORATION.
Ben S. Gravolet
v.
Fair Grounds Corporation.
Nos. 2003-CA-0392, 2003-CA-0958.
Court of Appeal of Louisiana, Fourth Circuit.
July 14, 2004.
Rehearing Denied August 13, 2004.
*901 James M. Garner, Timothy B. Francis, Joshua S. Force, Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
P.J. Stakelum, III, David R. Sherman, Stephen D. Marx, Julian R. Murray, Jr., Chehardy, Sherman, Ellis, Breslin, Murray & Recile, LLP, Metairie, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).

ON REHEARING GRANTED
DAVID S. GORBATY, Judge.
We granted rehearing in order to reconsider our original opinion in light of suggestions made in the appellee's motion for rehearing. For the reasons set forth below, we reverse our original opinion and affirm the trial court's judgment as to liability.

FACTS AND PROCEDURAL HISTORY
We refer to our original opinion, Gravolet v. Fair Grounds Corp., XXXX-XXXX (La.App. 4 Cir. 12/17/03), 865 So.2d 126, for a full discussion of the facts and procedural history in this matter.

DISCUSSION
ASSIGNMENTS OF ERROR BY THE FAIR GROUNDS CORPORATION ("FGC"):
FGC avers that the trial court erred in granting partial summary judgment *902 on the issue of liability. Principles of fiduciary duty law preclude Gravolet from now enforcing the lease clause at issue against FGC because, in acquiring the property through exercise of FGC's option to purchase the property, Gravolet breached his fiduciary duties to the FGC and assisted another in breaching his fiduciary duties to the FGC. Additionally, FGC argues, there is a factual issue as to whether the Lease Extension Agreement bars Gravolet from enforcing the lease clause at issue.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Insurance Company v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, scrutinized equally, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof remains with the mover. Board of Assessors of the City of New Orleans v. City of New Orleans, XXXX-XXXX, p. 8 (La.App. 4 Cir. 9/25/02), 829 So.2d 501, 506, writ denied 2002-2633 (La.1/10/03), 834 So.2d 439. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and if, without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La.1993).
Thus, we apply a two-prong test to determine whether Mr. Gravolet's motion for partial summary judgment as to liability should have been granted: (1) has he established that no genuine issues of material fact remain? (2) If so, does the record show that he is entitled to judgment as a matter of law?
The Louisiana Civil Code provides that "[c]ontracts have the effect of law for the parties ... [and] must be performed in good faith." La. C.C. art.1983. Consequently, a lease contract is the law between the parties and defines their respective rights and obligations. Corbello v. Iowa Production, XXXX-XXXX, p. 4 (La.2/25/03), 850 So.2d 686; Carriere v. Bank of Louisiana, 95-3058, p. 8 (La.12/13/96), 702 So.2d 648, 665-66. Here, the Lease clearly and explicitly established the parties' rights and obligations as to restoration of the premises at the end of the lease term.
*903 Specifically, the Lease provided, "The Landlord, at his option, may require the building to be replaced in its original condition upon the termination or expiration of this lease." (Emphasis added.) This provision obligated FGC, at Gravolet's option, to restore the premises to a Mexican restaurant as it had been before FGC converted it to an OTB. FGC does not dispute that the Lease contained this language or its meaning. Where a lease's words are clear and unambiguous, a court must enforce its explicit terms. Brown v. Manhattan Life Ins. Co., XXXX-XXXX, p. 4 (La.6/29/01), 791 So.2d 74, 77.
In Corbello, the Louisiana Supreme Court recently enforced a similar lease provision. The lease at issue provided that "upon termination of this lease, [the lessee] will reasonably restore the premises as nearly as possible to their present condition." Corbello, XXXX-XXXX, at p. 4, 850 So.2d at 694. The Supreme Court held that this provision clearly and explicitly obligated the lessee to reasonably restore the property to its condition at the beginning of the lease. Id.
FGC argues that Gravolet cannot enforce the "original condition" provision in the Lease because in executing the Lease Extension Agreement, the parties intended to permit either party to "walk away from the lease without further obligation." FGC premises this argument upon the affidavit of William H. Kurtz.
The clear and explicit terms of the Lease Extension Agreement refute Kurtz's affidavit, rendering it mere parol evidence and thus, irrelevant. The Lease Extension Agreement provided, in pertinent part:
Tenant shall have the right to terminate this Lease at any time during the Extended Term by giving the Landlord a nine (9) month written notice of his desire for an early termination; and all rights and obligations of both parties under the Lease shall cease upon the expiration of the aforementioned nine (9) month period.
* * *
EXCEPT AS HEREIN extended, modified, supplemented, or amended, all of the terms, covenants and conditions of the Lease shall remain in full force and effect as heretofore written, and the Lease as extended, modified, supplemented or amended by this Agreement is hereby ratified and confirmed in every respect. Any reference in the Lease to the Lease Term or Extended Term shall include this Agreement and any renewals or extensions hereof.
As the trial court found, the Lease Extension Agreement did not expressly "modify, supplement or amend the `original condition' provision." Moreover, under this agreement, the parties' rights and obligations under the Lease did not cease on the date the parties executed the agreement, but only when the Lease actually terminated.
Gravolet and FGC entered into the Lease Extension Agreement on July 7, 1999, and less than three weeks later, FGC, not Gravolet, chose to terminate the Lease early. Subsequently, months before the Lease terminated, Gravolet exercised his right under the "original condition" provision and notified FGC of this election. Gravolet exercised this right before the Lease and the parties' rights and obligations under it ceased. Thus, FGC was obligated to restore the premises to their "original condition" because the Lease Extension Agreement did not modify this provision, and Gravolet exercised his option before the parties' rights and obligations under the Lease ceased.
*904 FGC contends that principles of fiduciary duty law preclude Gravolet from enforcing the original condition provision. In support of this argument, FGC cites only jurisprudence holding that a fiduciary may not take advantage of its principal. FGC has failed to prove either that equitable principles under Louisiana law allow it to avoid its obligations under the Lease, or that Gravolet actually took advantage of FGC. FGC cites no statutory or jurisprudential authority for its argument that an alleged breach of fiduciary duty would allow it to avoid its contractual obligations under the Lease. Further, FGC's summary judgment evidence documented only Gravolet's acquisition of the property, not a breach of any fiduciary duty. Moreover, FGC's actions over the last ten years constitute a tacit, if not express, ratification of Gravolet's acquisition of the premises and right to act as landlord. We find that the trial court properly granted partial summary judgment on the issue of liability, and affirm that ruling.
FGC next contends that the trial court erred in awarding damages, in light of the fact that Gravolet entered into a new lease for a substantially higher rent and permitted his new tenant to make substantial renovations to the premises.
The Louisiana Supreme Court has recently noted that:
In determining damages, the trier of fact is accorded much discretion. The assessment of damages by the jury is a determination of fact. The role of an appellate court in reviewing an award of general damages is not to decide what it considers to be an appropriate award, but rather, to review the exercise of discretion by the trier of fact. The adequacy of the award should be determined by facts or circumstances particular to the case under consideration.
Corbello, XXXX-XXXX at p. 7, 850 So.2d at 696. This court has similarly held that the "standard of review in overturning damage awards requires that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it `shocks the conscience.'" Mossy Motors, Inc. v. Sewerage & Water Bd. of New Orleans, XXXX-XXXX, pp. 2-3 (La.App. 4 Cir. 9/19/01), 797 So.2d 133, 136 (citation omitted).
FGC asserts that the trial court erred in awarding Gravolet the full amount of the construction costs estimated by construction expert William Bourgeois. Specifically, the inclusion of $137,280.00 for the replacement of the air-conditioning chiller was contrary to the evidence, as was the inclusion of approximately $40,000.00 for the cost of replacing or restoring the Mexican tile in the restrooms, FGC avers.
Both Gravolet and FGC presented expert testimony from local contractors, who provided cost estimates for restoring the premises to their "original condition." William Bourgeois of Shamrock Construction Company ("Shamrock") testified for Gravolet, and Michael Marsiglia of Marsiglia Construction Company ("Marsiglia") testified for FGC.
After hearing both witnesses testify and reviewing their reports, the trial court determined that Mr. Bourgeois was a "credible witness" and "accept[ed] and adopt[ed] the estimate provided by Shamrock of $880,470.00 for the cost to restore the premises to its `original condition.'" The trial court "noted similarities in the estimates provided by the general contractors for both parties," but found that Marsiglia's estimate "failed to include: the cost for the replacement of the air-cooled chiller system; the architect's fee for the reuse of the plans; and, the cost for installation *905 of a fire alarm system." In support of Mr. Bourgeois's estimate, the trial court also heard testimony from his HVAC subcontractor, Kim Guzman, who prepared the HVAC portion of the estimate, including the air-cooled chiller system estimate.
This court has recognized that "[g]reat deference is accorded to the trial court's factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court's judgment." Vignette Publications, Inc. v. Harborview Enters., Inc., XXXX-XXXX, p. 7 (La.App. 4 Cir. 9/12/01), 799 So.2d 531, 536. Consequently, a "trial court's findings of fact may not be reversed absent manifest error or unless they are clearly wrong." LaBove v. Raftery, XXXX-XXXX, p. 7 (La.11/28/01), 802 So.2d 566, 572. The Supreme Court has further instructed that:
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. The reviewing court must always keep in mind that "if the trial court's or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."
Id. Importantly, "[w]here a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Vignette Publications, XXXX-XXXX, pp. 7-8, 799 So.2d at 536; see also Mossy Motors, XXXX-XXXX, p. 4, 797 So.2d at 136.
The trial court heard sufficient evidence to support its award regarding the air-cooled chiller system. Mr. Bourgeois testified that he included the replacement of the air-cooled chiller system in his estimate based upon his subcontractor's determination that the system was not operational although it had been at the beginning of the Lease. The trial court also heard testimony from Mr. Guzman, who has thirty years of experience with large retail HVAC systems for buildings, shopping centers and hotels, including the service, installation and design of air-cooled chiller systems. Mr. Guzman inspected the system at issue and testified that it was in a "state of disrepair," had not been in operation for a number of years, and suffered from a lot of corrosion and deterioration of its structural cabinetry and piping. Mr. Guzman further opined that this system had been in a state of disrepair for approximately five to ten years, and the damage could not have occurred in only two years. Finally, Mr. Guzman described what work would have to be done to restore the chiller system and the cost for that work.
FGC's complaint about the award for ceramic tile actually involves the plumbing estimate for restoration of the restrooms, the cost for which Mr. Bourgeois and his subcontractor estimated at $15,000.00. FGC's plumbing contractor estimated a cost of $500.00 for maintenance for these bathrooms. FGC ascribes all of this difference to removing sheetrock and replacing tile and contends it should not be responsible for this work because the new tenant allegedly sheetrocked over the tile. Mr. Bourgeois testified, however, that the plumbing work in the bathrooms also included the cost of installing piping. It should be noted that Mr. Bourgeois's estimate for ceramic tile was actually lower than that of Mr. Marsiglia.
FGC argues that the trial court's award of full restoration costs to Gravolet "results in an inequitable `windfall' "by not *906 reducing those costs to account for depreciation. However, Corbello refutes this proposition.
In Corbello, the plaintiffs leased property to Shell Oil Company ("Shell"). Under the lease, Shell "agree[d] that upon termination of this lease it will reasonably restore the premises as nearly as possible to their present condition." Id. at p. 4, 850 So.2d at 694. On writ of certiorari to the Louisiana Supreme Court, Shell argued that "the legal principles that restrain immovable property damages in tort and specific performance cases to the market value of the property should also apply in cases of damages for breach of contract." Id. at p. 2, 850 So.2d at 692. These principles limit recovery in a variety of ways, including to "the cost of replacement new, less depreciation, if the value before and after the damage cannot be reasonably determined, or if the cost of repairs exceeds the value of the thing damaged." Id. at p. 5.
The Supreme Court rejected this argument, holding that the "measure of damages in breach of contract cases is governed by the four corners of the contract." Id. The Supreme Court observed, "[T]he contractual terms of a contract, which convey the intentions of the parties, overrule any policy considerations behind such a rule limiting damages in tort cases." Id.
In light of Corbello and the clear and explicit terms of the Lease, the trial court correctly awarded Gravolet the full restoration costs. The four corners of the Lease required FGC to restore the premises to their "original condition" and did not provide any deduction for depreciation. As such, we find that the trial court did not abuse its discretion in awarding $880,470.00 in restoration damages. Further modification of this award will be discussed below.
FGC additionally argues that the trial court erred in awarding Gravolet $168,000.00 for loss of rents during the six months it would have taken to restore the premises.
FGC contends that Gravolet waived any claim for lost rent during the restoration period by permitting his new tenant to renovate the premises, or alternatively, that Gravolet fully mitigated the loss. This argument lacks merit. Gravolet had an obligation to try to mitigate his losses, and he satisfied that obligation by re-letting the premises. Gravolet could not lease the premises to any new tenant without allowing it to renovate the premises, because the premises were configured as an OTB, and only FGC could operate an OTB there. Regardless, the new tenant did not restore the premises to a restaurant, which is what Gravolet testified he wanted, and what the Lease obligated FGC to do.
FGC asks that this court reduce the lost rent from $28,000.00 to $13,125.00 per month for six months. Such a reduction is necessary because the trial court intended to award Gravolet the monthly rent FGC was paying at the end of the lease, according to FGC.
At the end of the Lease, FGC's rent was $13,125.00 per month. At the time of trial, the rent owed by Gravolet's new tenant was $28,000.00 per month. The trial court in its Reasons for Judgment stated that "at most, the revenue costs would be six months of rent at the rate paid by FGC when it terminated the lease, $28,000.00 per month." Based upon this statement, it appears that the trial court intended to award Gravolet six months of rent based upon FGC's rent at the end of the Lease. It erroneously used the wrong figure to calculate that amount, mistakenly utilizing the amount of rent paid per month by Gravolet's new tenant. Under *907 the reasoning articulated in the Reasons for Judgment, the trial court should have awarded past lost rent in the amount of $13,125.00 per six months, bringing the total amount of lost rent to $78,750.00. We find that this assignment of error has merit and hereby amend the trial court's judgment to reflect this amount for lost rent.
Finally, FGC avers that the amount of attorneys' fees awarded by the trial court should be set aside. FGC explains that it was error for the trial court to fix the amount of attorney's fees awarded in light of the stipulation entered into at trial by the parties that the amount of such fees would be determined by a subsequent rule.
The trial court awarded Gravolet $349,490.00 as attorney's fees based on a clause in the Lease that obligated the tenant to pay the landlord's reasonable expenses, including attorneys' fees. The court then noted that Gravolet was represented by counsel pursuant to a contingency fee contract under which his attorney was entitled to one-third of any recovery. The award fixing the attorneys' fees was contrary to the following stipulation that was entered at the conclusion of plaintiff's case:
THE COURT: Well, we've got one witness today. That was productive. Plaintiff rests?
MR. GARNER: Subject to  We've worked this out, Your Honor. As you know, we have a claim for attorneys' fees, which were provided under the lease, and costs. And we'd like to hold the record open. We're gonna sit down with P.J. and Steve to finalize that evidence. But we're gonna sit down and work that out, assuming you enter a ruling in our favor, which we pray for.
MR. STAKELUM: I thought what we had talked about was that, you know, you've already put on your liability evidence regarding attorneys' fees and that if the Court were to award attorneys' fees, the judgment would simply say plus reasonable attorneys' fees. And then we would do it by a separate rule.
MR. GARNER: That's fine. That's what I was trying to say.
THE COURT: All right.
We find that, based upon the stipulation referred to above, it was improper for the trial court to have fixed the amount of the attorneys' fees in his judgment. As such, we reverse the portion of the judgment awarding attorneys' fees, and remand this matter for a hearing to determine the amount of attorneys' fees that should be awarded in this case.

ANSWER TO THE APPEAL
Gravolet answered FGC's appeal and filed a separate appeal that was consolidated with the instant appeal.
Gravolet argues that the trial court erred in not awarding him the full rent, property taxes, and insurance he has lost/ will lose as a result of defendant's breach of the lease, from the date the lease was terminated up through and including the period of reconstruction.
The trial court stated in his Reasons for Judgment:
Future rents are too speculative to be awarded. Gravolet's damages were mitigated by rental to the tenant. Once renovation costs had been expended, there would be no future damage. All relevant testimony was consistent that renovation would take approximately six months to complete. The court finds at most the revenue costs would be six months of rent at the rate paid by FGC when it terminated the lease..."
We find no error in these conclusions of the trial court and deem them to be supported *908 by the evidence and testimony adduced at trial. We conclude that the award of six months lost rent is appropriate under the circumstances to compensate Gravolet. We do not deem it necessary to amend the trial court's award to include future lost rent, property taxes, and insurance. We also reference the issue of the amount of lost rent as more fully discussed above.
Gravolet contends that he should be awarded the amount of income tax he will have to pay on the award for restoration costs. The fact that the Fair Grounds will pay damages, as opposed to restoring the premises to the original condition as required by the lease, creates a taxable event for Gravolet that he would not have incurred otherwise. Thus, the restoration costs should be "grossed up" to $1,600,855.00 to account for the tax burden, he argues.
Section 109 of the Internal Revenue Code provides that:
Gross income does not include income (other than rent) derived by a lessor of real property on the termination of the lease, representing the value of such property attributable to buildings erected or other improvements made by the lessee.
26 U.S.S. § 109. Under § 109, if FGC had restored the premises to a restaurant, as the Lease required, Gravolet would not have had to pay income taxes on those improvements at the termination of the Lease. However, Gravolet will be required to pay income taxes on the trial court's award of restoration costs. The trial court's award of restoration costs should have taken this additional damage into account. It abused its discretion by failing to "gross up" the restoration costs award to compensate for the state (6%) and federal (39%) taxes Gravolet will have to pay on the award. To determine the full award for restoration costs, we must calculate fifty-five percent of the gross income needed to equal $880,470.00. Therefore, we find that the full award for restoration costs should be $1,600,855.00 (i.e. $1,600,855.00  (0.45 x 1,600,855.00) = $880,470.00). Awarding Gravolet these additional damages is the only way to ensure that the after-tax award will be sufficient to cover the actual cost of restoration. As such, this portion of the trial court's judgment is amended, and the award of restoration costs is increased by $720,385.00 to $1,600,855.00.
Gravolet next argues that the trial court erred in not awarding him pre- and post-judgment interest on damages awarded.
FGC concedes that ordinarily a party is entitled to interest from the date of breach. However, as L & A Contracting Co. v. Ram Indus. Coatings, Inc., XXXX-XXXX, p. 27 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, 1238-39, noted, pre-judgment interest is meant to fully compensate the injured party for the use of the funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of the action. In the instant case, Gravolet sought to have his property returned to the condition it was in immediately prior to the inception of the lease in 1989. Although he claimed that FGC should have returned the property to this condition in 2000, the evidence he presented at trial consisted of Bourgeois's estimate, which represented what Bourgeois would have charged to do the work at the time of trial in 2002. Similarly, the estimate of Marsiglia, FGC's expert, was based upon what he would have charged to do the work at the time of trial. Thus, any added cost for the difference between what it would have cost to do the work in July 2000 and what it would have cost to do the work at trial a *909 little over two years later was already built into both expert's estimates.
The amount awarded by the trial court was sufficient to return the property to its 1989 condition based on construction costs at the time of trial. None of the cases cited by Gravolet involve instances in which a court was asked to award pre-judgment interest on a damage award that was based on costs measured as of the time of trial. To allow additional interest from August 1, 2000 to the present would amount to an impermissible double dip. As such, we find that the trial court did not err in failing to award pre-judgment interest.
FGC does not dispute that the trial court judgment should include post-judgment interest from the date it was signed. As such, this matter is remanded to the trial court for the calculation and addition of post-judgment interest.
Finally, Gravolet requests that this court modify the trial court's award of attorneys' fees, because of defendant's appeal, and award his attorneys forty percent of his damages, as provided for in his contingency fee agreement.
As discussed above, we find that, in light of the stipulation entered into by the parties, the trial judge erred in awarding attorneys' fees in the judgment. We thus remand this matter for a full hearing on the issue of the amount of reasonable attorneys' fees.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and amended in part. This matter is remanded for the trial court for further proceedings as discussed herein.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; REMANDED.
ARMSTRONG, C.J., CONCURS IN PART AND DISSENTS IN PART.
ARMSTRONG, C.J., CONCURS IN PART AND DISSENTS IN PART, WITH REASONS.
We granted rehearing in order to reconsider our original opinion in light of suggestions made in the appellee's motion for rehearing. Because I believe the appellant's allegations of breach of fiduciary duty raise issues of material fact that make summary judgment inappropriate in the present posture of this case, I respectfully dissent from that portion of the opinion that affirms the trial court's judgment granting a summary judgment on the issue of liability.
It is clear that Mr. Gravolet is correct in his contentions that the Fair Grounds Corporation (FGC) knowingly and voluntarily agreed in its original lease agreement with Mr. Keyworth to return the property to its original condition. In order to protect its sizeable investment in the improvements to the property, FGC received an option to purchase the property for a fixed price. It is equally clear that FGC had the right to rely on its agents, Messrs. Gravolet and Roussel and on Mr. Roussel in his additional capacity as their counsel, to act, as provided for in the corporate resolution authorizing their agencies, "for AND ON BEHALF OF" FGC. If FGC can prove its allegations at trial, then the trier of fact could conclude that the alleged actions of Messrs. Gravolet and Roussel in exercising FGC's option to purchase for Mr. Gravolet's own account effectively eliminated FGC's ability to protect its investment in improvements to the leased property. The material fact to be determined is whether once Mr. Gravolet purchased the property, *910 FGC effectively was deprived of the benefit of the lease provision allowing FGC to purchase the property on favorable terms.
Based on the documentary evidence adduced at the hearing on the motion for summary judgment, there exist genuine issues of material fact as to whether the alleged actions of these agents constituted a breach of their fiduciary duties as agents to their principal. These facts are material as they affect the validity of the exercise of the option by the agent, rather than by the corporation on whose behalf he was authorized to act. Absent a valid exercise of the option to purchase, Mr. Gravolet has no right to enforce the obligations of the lease.
The appellee argues that FGC's actions in signing an extension of the lease in effect ratified the agents' alleged actions. However, FGC claims that at the time it paid rent to Mr. Gravolet and agreed to the extension of the lease, it was unaware of the alleged breaches of the agents' fiduciary duties as agents and as attorney for FGC. FGC claims that once it became aware of the basis of its allegations of breach of fiduciary duty affecting the validity of Mr. Gravolet's exercise of the option to purchase, it amended its answer to include these allegations. These are genuine issues of material fact that require determination at a full trial on the merits.
I concur with the majority's scholarly and lucid discussion of the attorney's fee and quantum issues, should liability be found.