ROLAND L. BELSOME, Judge.
hln this construction case, Lamar Contractors, Inc., the general contractor, filed a breach of contract suit against Kacco, Inc., the subcontractor. In response, Kac-co filed a reconventional demand against Lamar. Lamar now appeals the trial court’s award in favor of Kacco. On cross-appeal, Kacco challenges the trial court’s damages award in favor of Lamar. For the following reasons, we affirm.

PROCEDURAL HISTORY

Lamar was selected as the general contractor in the construction of the YMCA[1] in Plaquemines Parish. After a bid-selection process, Kacco was awarded a subcontract in the amount of $164,500.00 to perform framing and drywall work on certain portions of the building. Kacco began working on the job site at the end of October, 2010. In early February, 2011, Lamar placed Kacco in default and officially terminated the contract on February 5, 2011.
Subsequently, Lamar filed this suit against Kacco for breach of the Subcontract, and Kacco responded by filing a reconventional demand against Lamar. After a trial on the merits, the trial court rendered a judgment in favor of |2Lamar in the amount of $24,116.67. It additionally awarded Lamar attorney’s fees and costs in the amount of $7,681.75 and $3,105.81, respectively. The trial court further rendered a judgment in favor of Kacco in the amount of $60,020.00. Both Lamar and Kacco filed appeals.

FACTS

The following evidence was deduced, through witness testimony and exhibits, at trial. Kacco officially worked at the job site from October 26, 2010 through February 5, 2011. The project consisted of two major phases: framing work and the drywall work. Before Kacco began working, there were two change orders. The first change order resulted in a $585.00 decrease in the price of the subcontract based on a change in the size of studs to be used for the rear wall.
Kacco had recurring issues related to providing manpower and materials. On November 9, 2010, Steve Louque, Lamar’s representative and project manager, sent a certified letter on behalf of Lamar to Noel Buras, the owner of Kacco, expressing concerns regarding the lack of manpower and materials to timely complete the project.
On November 16, 2010, Mr. Buras responded by email and explained that the supply company put his account on hold. Mr. Buras expressed that Kacco could not pay the balance down, because it did not have sufficient funds. ' Mr. Buras requested that Lamar issue a joint check to Kacco and the supplier. Lamar agreed to issue a joint check, but only if Kacco agreed to a 10% back charge for the cost of the materials purchased. Kacco declined. In the interim, Mr. Buras was able to pay the supply company debt down; thus, enabling Kacco to purchase more supplies and continue the framing work.
| .¡Kacco worked through November and December. Towards’ the end of November, Kacco submitted an invoice for work performed that month. The invoice submitted at the end of December reflected that forty-five percent of the work had been performed. Lamar received payment for Kacco’s November invoice on De *86 cember 28, 2010, and issued a cheek to Kacco in the amount of $32,022.11 on December 30th.
Mr. Buras deposited the check; however, Kacco’s bank dishonored the check due to his failure to properly endorse the check. Mr. Buras mistakenly believed the check was returned for insufficient funds, and informed some of his employees and suppliers to hold checks he had issued due to the returned check. Once Lamar learned of these assertions, the business relationship between Lamar and Kacco declined.
On January 13, 2011, Lamar sent another email to address continuing concerns with Kacco’s ability to perform its scope of work under the contract. It also expressed dissatisfaction with Mr. Buras’s incorrect recounting of the facts involving the check issued by Lamar and threatened to file a defamation lawsuit. On the same day, Mr. Buras responded by email apologizing for the misunderstanding and addressed Lamar’s concerns regarding manpower and materials. He indicated that if Lamar needed to replace him, he understood, but he wanted to be allowed to finish the job.
Kacco continued working on site. After Kacco reported its completion of the metal framing and stud work, John Desselle, the site superintendent, arranged for John Bose, the structural engineer on the project, to inspect the metal framing for the exterior walls. Despite some minor deficiencies noted in the ten item punch Llist, the engineer’s field report, dated January 20, 2011, reflected that the framing was complete, and the “work was well done and according to the drawings.”
On January 28, 2011, Mr. Buras met with Mr. Desselle on site to discuss some questions about the engineer’s punch list. On January 31, 2011, Mr. Buras emailed Lamar in reference to some remaining issues and clarification regarding the structural engineer’s punch list of items for final completion of the framing work. In that email, Mr. Buras again notified Lamar that Kacco was waiting on the payment of its December invoice to pay the supplier and order the necessary supplies to complete the punch list. Despite the fact that Lamar and the architect had approved Kacco’s December invoice and Lamar had received payment from the owner, on January 26, 2011, Kacco was not paid for the work it performed in December.
With Kacco unable to obtain supplies to complete the punchlist, Lamar sent Kacco a default notice on February 3, 2011, stating that its contract would be terminated if it did not provide sufficient manpower and materials within forty-eight hours. Kacco did not respond to Lamar or return to the job site. Lamar officially terminated Kac-co’s subcontract in a letter dated February 5, 2011. In that letter, Lamar explained that it would begin requesting bids from other subcontractors to complete Kacco’s scope of work.
However, without requesting bids, Lamar hired Barrett Interior Specialty, Inc. to complete the work. Lamar paid for the materials, and Barrett performed the remainder of the work on a cost-plus basis.[2] Lamar paid Barrett $151,144.38 for the cost of materials and the work it performed. Lamar paid Kacco $32,022.11 for |5the work it performed in November. The adjusted price of Kacco’s subcontract, after the decrease for the second change *87 order, was $163,915.00. In total, Lamar paid $248,249.83 to complete the framing and drywall work under Kacco’s subcontract.

STANDARD OF REVIEW

In reviewing a trial court’s findings of fact, appellate courts employ a “manifest error” or “clearly wrong” standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted). Likewise, mixed questions of law and fact are also reviewed under the manifestly erroneous standard of review. CII Carbon, L.L.C. v. Nat’l Union Fire Ins. Co. of Louisiana, Inc., 05-71 (La.App. 4 Cir. 8/17/05), 918 So.2d 1060, 1065 (citation omitted).

DISCUSSION

On appeal, Lamar challenges both of the trial court’s awards and the amount of attorney’s fees awarded.[3] On cross-appeal, Kacco complains of the trial court’s finding that it breached the subcontract and of Lamar’s award, including attorney’s fees. We will first address the issues regarding Kacco’s breach of contract; then we will address the trial court’s awards.

KACCO’S BREACH OF CONTRACT

Kacco argues that the trial court erred in finding that it was in breach of the subcontract for failure to provide materials. In particular, it avers that Lamar failed to establish that its failure to provide sufficient materials resulted in any damages to Lamar.
|ñThe essential elements of a breach of contract claim are (1) the obli-gor’s undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obli-gee. See 14.36 Jackson Joint Venture v. World Constr. Co., Inc., 499 So.2d 426, 427 (La.App. 4th Cir.1986).
The burden of proof in an action for breach of contract is on the party claiming rights under the contract. Vignette Publications, Inc. v. Harborview Enterprises, Inc., 00-1711, p. 3 (La.App. 4 Cir. 9/12/01), 799 So.2d 531, 534 (citation omitted). The existence of the contract and its terms must be proved by a preponderance of the evidence. Id. A contract is formed by the consent of the parties established through an offer and acceptance; the offer and acceptance may be verbal unless the law prescribes the requirement of writing. Vignette Publications, Inc., 00-1711, pp. 3-4, 799 So.2d at 534 (citation omitted).
There is no evidence in the record that the written contract was signed by the parties. However, the existence of a subcontract between the parties is not at issue on appeal. The subcontract between Lamar and Kacco provided that Kacco would complete the metal framing and drywall work on the project. The contract stated that Kacco “shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly qualified workmen and a sufficient amount of materials and supplies of proper quality to prosecute said work efficiently and promptly, and shall promptly pay for all materials purchased[.]” The contract further provided that if Kacco did not provide a sufficient quantity of materials of proper quality, abandoned, or failed to promptly and diligently perform the work covered under the contract, Lamar could terminate the contract after issuing a twenty-four hour written notice to Kacco.
*88 |7Here, the trial court found that Kacco breached the subcontract in failing to provide sufficient materials on the job site to complete the work. The record is replete with evidence that Kacco was not providing an adequate amount of materials. At trial, Mr. Louque, Mr. Desselle, and Mark Hennessey, employees of Lamar, all testified that Kacco often lacked the necessary materials to perform its scope of work. Mr. Buras, the owner of Kacco, also acknowledged that Kacco could not purchase the necessary materials because Kacco’s account with the supplier needed to be paid down.
The daily logs and letters corroborate the witness testimony. Specifically, on January 31, 2011, Mr. Buras, himself, emailed Lamar and noted that he could not order the necessary studs until his account with the supplier was paid down. As a result of Kacco’s failure to properly provide supplies, Lamar issued a default notice. Kacco never returned to the job site. Lamar terminated the subcontract two days later and hired Barrett incurring $84,334.33 in additional expenses. Though the earlier materials issues may not have caused any damages to Lamar, the final breach at the end of January/beginning of February caused damages in that Lamar expended an extra $84,334.33 to replace Kacco. Since the witness testimony and evidence admitted at trial supports the trial court’s conclusion, we cannot say that the trial court was manifestly erroneous in finding that Lamar suffered damages due to Kacco’s failure to provide sufficient materials as required under the subcontract.

LAMAR’S DAMAGES AWARD

As a result of Kacco’s breach, the trial court awarded Lamar $24,116.67 in damages. Lamar asserts that the trial court erred in both assessing the actual damages, and in further reducing the award for its contributory negligence.
lsIf the contractor fails to do the work he has contracted to perform, or does not execute in the manner agreed to he is liable in damages for losses that may ensue from his noncompliance with the contract. Henderson v. Ayo, 11-1605, p. 6 (La.App. 4 Cir. 6/13/12), 96 So.3d 641, 645 (citing La. C.C. art. 2769). The owner should be placed in the position he deserved to be in when the building was completed. Id. (citing Rice v. Mesa General Contractor, L.L.C., 08-115, p. 12 (La.App. 5 Cir. 05/27/08); 986 So.2d 122, 129).
In its judgment, the trial court awarded Lamar $24,116.67 in damages. In its written reasons, the trial court assessed the actual damages award at $72,350.00. It then reduced the amount by 2/3 of the actual damages amount due to Lamar’s contributory negligence, thus reaching $24,116.67.
It arrived at the actual damages amount by taking the contract price and subtracting the value of the work completed by Kacco. In its written reasons, the trial court found that: $72,350 in actual damages would place Lamar “absent any negligence on its part in the same position as if Kacco had fulfilled the obligation.” (emphasis added).
It is clear from the trial court’s reasons that the trial court factored in Lamar’s negligence when assessing the actual damages. Thus, it reduced the damages award for Lamar’s contributory negligence ■ both in arriving at the actual damages award and by reducing that award by 2/3. Thus, the only issue is whether the trial court abused its discretion in reducing the damages for contributory negligence.
Lamar asserts that the trial court erred in reducing the damages based on its contributory negligence. Lamar argues that contributory negligence “consists of a civil wrong of negligence in tort or delictual *89 law in Louisiana;” therefore Lamar |flwould have to have breached a duty imposed by law, not by contract, to be hable for damages. In addition, Lamar argues that if contributory negligence applies in this case, then the trial court erred in finding that it was contributorily negligent. Meanwhile, Kacco argues that the trial court should have found that Lamar’s bad faith caused its ■ breach; . thus Lamar should not recover any damages.
La. C.C. art. 2003 states:
An obligee may not recover damages when his own bad faith has caused the obligor’s failure to perform or when, at the time of the contract, he has concealed from the obligor facts that he knew or should have known would cause a failure.
If the obligee’s negligence contributes to the obligor’s failure to perform, the damages are reduced in proportion to that negligence.
A plain reading of the above text makes it clear that the Article 2003 applies in situations where there is a breach of contract, and the obligee has purposefully or negligently caused or contributed to the obli-gor’s breach.[4]
The facts in this case are clear. Kacco needed money to obtain materials. Lamar refused to pay for the materials without a 10% charge. Lamar had received payment for Kaeco’s December invoice on January 26, 2011. Instead of promptly paying Kacco, as it had done in December, Lamar withheld that payment. Since Kac-co did not have the money to purchase the materials, it was placed in breach, and the contract was terminated. While the evidence establishes that Kacco was partly responsible for its failure to perform; Lamar’s failure to pay Kacco played a substantial role in causing Kacco’s breach. If Lamar had paid Kacco, Kacco |1flwould have avoided the breach. Thus, the trial court was not manifestly erroneous in finding that Lamar’s negligence contributed to Kacco’s failure to perform its obligation, and reducing the damages in'proportion to that negligence.
Kacco contends that Lamar breached the contract when it failed to pay Kacco for the December invoice when it received payment from the owner on January 26, 2011. However, the contract provided that Lamar had ten working days from receipt of payment to pay Kacco. Therefore, Lamar was not required to pay Kacco until February 9, 2011. Lamar officially terminated the.contract on February 5th, before it was required to pay Kacco. Thus, Lamar did not breach the terms of the- contract. •
Next, Lamar claims that -the trial court’s reduction was excessive and unwarranted. As discussed, when the obligee’s negligence contributes to the obligor’s failure to perform, the damages are reduced in proportion to that- negligence. La. C.C. art. 2003. The standard of review for a damages award for breach- of contract is whether the trial court abused its discretion. Taaffe v. Factory Direct Installations, Ltd., 08-175, p. 14 (La.App. 4 Cir. 04/15/09), 13 So.3d 562, 569.
*90 In total, Lamar spent $248,249.33[5] to complete the work under Kacco’s subcontract. Kacco’s subcontract amount was $163,915.00. Therefore, the amount of damages to make Lamar whole was $84,334.33. Due to Lamar’s contributory negligence, the trial court reduced the award by approximately seventy-one percent and awarded Lamar $24,116.67 in damages. Since Lamar’s Innegligence played a substantial role in causing Kac-co’s breach, we cannot say that the trial court abused its discretion in reducing Lamar’s damages by 71 percent under the circumstances in this case. As such, Lamar’s damages award is affirmed.

KACCO’S DAMAGES AWARD

Lamar also takes issue with the trial court’s award to Kacco. In particular, it argues that since Kacco breached the contract, it could not claim damages for non-performance.
A contractor who does not substantially perform under the terms of contract may not recover on the contract, but his recovery is restricted to a quantum meruit. Keating v. Miller, 292 So.2d 759, 763 (La.App. 4th Cir.1974) (citation omitted). Civil Code Article 2765[6] forms the basis for a contractor’s claim in quantum meruit. Henderson v. Ayo, 11-1605, p. 6 (La.App. 4 Cir. 6/13/12), 96 So.3d 641, 645-46. In an action for quantum meruit, the contractor is entitled to recover as much as he reasonably deserves for his services, and the time and labor required. Henderson, 11-1605, p. 6, 96 So.3d at 646 (citation omitted).
The trial court awarded Kacco a total of $62,020.00 for its unpaid work. The evidence admitted at trial reflects that Kacco performed acceptable work in December and January, in the amount of $56,450.00. In turn, Lamar submitted pay applications to the owner and was paid for Kacco’s work during these months. Though Kacco was paid for work in November, Lamar retained 10%, $3,570.00, subject to final completion. Applying the law of quantum meruit entitles Kacco to 112be paid for the work it undertook, which the trial court properly found to be $62,020.00. For these reasons, the trial court’s award to Kacco is affirmed.

AWARD OF ATTORNEY’S FEES

Finally, both parties challenge the trial court’s attorney’s fees award to Lamar. Lamar asserts that the trial court erroneously reduced the fees by fifty percent, while Kacco asserts that it should have been awarded attorney’s fees and penalties instead of Lamar.
The trial court is vested with great discretion in arriving at an award of attorneys’ fees. Troth Corp. v. Deutsch, Kerrigan & Stiles, L.L.P., 06-457, p. 3 (La.App. 4 Cir. 1/24/07), 951 So.2d 1162, 1165 (citing Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983)). The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Id. Based on Rule 1.5(a) of the Rules of Professional Conduct, the Louisiana Supreme Court has itemized the following considerations for determining the reasonableness of attorneys’ fees: (1) *91 the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and the (10) the court’s own knowledge. State, Dept. of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 (La.1992). A reasonable attorney’s fee is determined by the facts of an individual case. Gottsegen v. Diagnostic Imaging Services, 95-977, p. 7 (La.App. 5 Cir. 3/13/96), 672 So.2d 940, 943. The trial court has the ultimate discretion to determine the amount of attorneys’ fees based on the court’s own knowledge, on the evidence, and on the court’s observation of the case and the record. Filson v. Windsor Court Hotel, 07-755 (La.App. 4 Cir. 7/23/08), 990 So.2d 63, 67 (citing Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441, p. 12 (La.App. 2 Cir. 12/8/99), 748 So.2d 594, 602-03). A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. In re Andras, 410 So.2d 328, 331 (La.App. 4th Cir.1982); See Filson v. Windsor Court Hotel, 07-756, pp. 6-7 (La.App. 4 Cir. 7/23/08), 990 So.2d 63, 67.
Lamar requested $15,353.50 in attorney’s fees. The trial court ultimately awarded Lamar $7,681.75, which was half of the requested amount. The contract provided that Lamar could collect the necessary fees for employing an attorney to collect damages due to Kacco’s breach of contract. There are no contractual or statutory grounds for Kacco to recover attorney’s fees, especially when considering that Kacco was responsible for the breach. Schreck v. One Hour Martinizing, Inc., 394 So.2d 838, 840 (La.App. 4th Cir,1981)(holding “it is well settled that attorney’s fees are not allowed unless provided for by statute or contract.”). See also Henderson, supra.
In the instant case, the facts were lengthy, and the trial lasted for four days. Yet, the claim for breach of contract was under $100,000 and fairly simple. Lamar recovered only $24,116.67 in damages. Thus, the attorney’s fee award represented approximately 30% of Lamar’s damages award. Given these circumstances, we cannot find that the trial court abused its vast discretion awarding $7,681.75 as reasonable attorney’s fees to Lamar. Accordingly, the award of attorney’s fees is affirmed.

^CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Further, Lamar’s request for attorney’s fees and costs associated with this appeal is denied.
AFFIRMED

. Young Men’s Christian Association.

. Lamar paid Barrett an hourly labor rate, plus a day rate for equipment, fuel, and travel time.

. Lamar also takes issue with the trial court's finding that Kacco provided sufficient manpower for the job. However, this issue is irrelevant since we find that the trial court correctly found a breach on other grounds. See discussion infra.

. Section (b) of the 1984 Revision Comments explains that "if negligence on the part of the obligee has played a part in causing the obli-gor’s failure to perform, without constituting its sole cause, the obligee’s recovery may be reduced accordingly.” The Revision Comments also cite to La. C.C. art. 2323, which highlights the distinction between comparative fault, in tort, and contributory negligence, in contract. See also Favrot v. Favrot, 10-986, p. 16 (La.App. 4 Cir. 02/09/11); 68 So.3d 1099, 1109 n. 11 (where this Court has discussed the application of Article 2003 within the context of obligations and contracts).

. Lamar paid Kacco $32,022.11 for its December invoice. Lamar paid $218,627.22 to complete the project. Thus, it paid a total of $250,649.33. However, at trial, Lamar acknowledged that Kacco had a $2400.00 credit, and reduced its claim accordingly. Thus, the total amount for the contract came to $248,249.33.

. La. C.C. art. 2765 states: "[t]he proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.”