# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-729

HAI NAM CHINESE RESTAURANT PARTNERSHIP

VERSUS

B & B CONSTRUCTION OF NEW IBERIA, ET AL.

**********

APPEAL FROM THE
ABBEVILLE CITY COURT
PARISH OF VERMILION, NO. 13234
HONORABLE CRAIG STEVE GUNNELL, CITY COURT JUDGE, AD HOC

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

> **AFFIRMED IN PART, REVERSED IN PART, AND RENDERED**.

**Roger Chadwick Edwards, Jr.**
**Edwards & Edwards**
**P. O. Box 217**
**Abbeville, LA 70511-0217**
**Telephone: (337) 893-2884**
**COUNSEL FOR:**
> **Intervenor Appellee - Third Generation Properties, L.L.C.**

**Mark Christopher Surprenant**
**Adams & Reese**
**4500 One Shell Square**
**New Orleans, LA 70139**
**Telephone: (504) 581-3234**
**COUNSEL FOR:**
> **Defendant - GS Roofing Products Co., Inc.**

**Paul Gonsoulin Moresi, III**
**P. O. Box 1140**
**Abbeville, LA 70511-1140**
**Telephone:  (337) 898-0111**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Hai Nam Chinese Restaurant Partnership**

**Mark Gerard Artall**
**111 East Main Street - Suite 108**
**Lafayette, LA 70501**
**Telephone:  (337) 233-1777**
**COUNSEL FOR:**
    **Secondary Defendant/Appellant - B & B Construction of New Iberia, Inc.**

THIBODEAUX, Chief Judge.

Plaintiff-appellant, Hai Nam Chinese Restaurant Partnership ("Hai Nam"), filed an action for breach of contract and breach of warranty against its roofer, defendant-appellee, B & B Construction of New Iberia, Inc. ("B & B"), because of a defect in the new roof that it paid to have installed at its restaurant. The trial court found that the roofing contract had been breached due to the negligent installation of the roof and awarded Hai Nam the return of the full roofing contract cost. Third Generation Properties, L.L.C. ("Third Generation"), the owner-lessor of Hai Nam's restaurant space, intervened in the action, seeking a recovery of any damages awarded to Hai Nam in the main demand. The trial court relied on the indemnification clause in their lease agreement and ruled in favor of Third Generation. Hai Nam appeals that ruling, and B & B has answered the appeal, seeking a reversal of the trial court's judgment against it on the main demand.

We affirm the trial court's judgment in favor of Hai Nam and against B & B Construction. The judgment of the trial court on the incidental demand in favor of Third Generation is reversed. Under the terms of the lease agreement and the record evidence, Third Generation did not suffer a loss because of any act of alleged noncompliance with the lease agreement.

I.

**ISSUES**

1.   Did the trial court err in finding that B & B negligently installed the roof and, therefore, breached the roof construction contract?

2.   Did the trial court err in awarding Hai Nam the return of the entire roof construction price that had been paid to B & B?

3. Did the trial court err in finding that Hai Nam was obligated under its lease agreement to indemnify Third Generation for the failure of the roof?

II.

## FACTUAL BACKGROUND

Ke Nong Shi and Xue (a/k/a Linda) Mei Yang are the partners comprising the Hai Nam Chinese Restaurant Partnership (hereinafter referred to collectively as "Hai Nam"). Hai Nam entered into a commercial lease agreement with the entity, Abbeville Associates, for the lease of restaurant space in the strip mall known as the Abbeville Shopping Center. The primary lease term was August 1, 1998, through July 31, 2004. During the primary lease term, the strip mall was purchased by Third Generation Properties, L.L.C., and the existing lease was assigned to Third Generation.

Although the regular monthly rent was $900.00, Hai Nam was given a $200.00 per month rent credit for the entire primary lease term, resulting in a reduced monthly rent obligation of $700.00. This amounted to a total rent reduction of $14,400.00 during the initial lease term. The basis for the rent credit was explained in the lease agreement as follows:

> 2.4 BASE RENT: The first payment of rent shall be due on the day that the term of this lease begins and subsequent payments of rent shall be due on the first day of each succeeding calendar month throughout the term of this lease. Except as provided herein the rent for the period from August 1, 1998 through July 31, 2004 shall be a monthly rental of $900.00 and shall be paid as follows:
>
> A. Lessor and Lessees recognize that there is a need for major repairs to the roof, air-conditioning and sewage facilities in the building herein leased. Estimates for those repairs indicate that it will approximate $25,000.00 to make the necessary repairs. Lessees agree to make the repairs which will

satisfy their needs and place the premises in a condition satisfactorily [sic] to Lessees. However, Lessor will cooperate and make every effort to obtain the municipal or governmental permits necessary to repair the plumbing problems that currently exist. In consideration thereof Lessor agrees to provide a rent credit to Lessees in an amount of $200.00 a month for the entirety of the primary term. It being understood by and between Lessor and Lessees that Lessees shall commence paying the sum of $700.00 per month for the entire primary term. The agreement as herein stated is meant to be an exception to the provisions of this lease expressed in Paragraph 4.1 wherein Lessees must obtain written consent of Lessor prior to making any improvements on the premises.

During the lease term, Hai Nam undertook repairs of the plumbing, air conditioning, and roof. Hai Nam paid $2,500.00 for repair work to the plumbing to unplug drains. Hai Nam also paid $9,692.83 for the installation of new air conditioning duct work and for the replacement of one of the location's two, roof-top air conditioning units. In addition, Hai Nam paid $12,585.23 for the installation of a new roof.

The roof was replaced because, by all accounts, it was in very poor condition and leaked excessively. According to Hai Nam, an inspection by the state health department determined it would be necessary for the roof leaks to be resolved before the restaurant could be opened. Therefore, in September 1998, prior to opening, Hai Nam accepted B & B's estimate for the installation of a new roof, which included a twelve-year materials warranty and a five-year labor warranty. B & B completed the installation in October 1998 and was promptly paid. Hai Nam also paid B & B to install new ceiling tiles throughout the restaurant at a cost of $3,200.00. Hai Nam, in sum, paid a total of $27,978.06 for repairs and improvements to the leased space during the primary lease term.

Approximately one year later, the new roof began to leak. Although B & B responded to numerous calls from Hai Nam over the next three years to address the leaking, the problems were never resolved. Ultimately, in 2002, even though the five-year labor warranty was still in effect, B & B refused to respond to repair calls from Hai Nam. As a result, on October 16, 2002, Hai Nam filed suit, alleging breach of contract and breach of warranty.[1] Hai Nam continued its restaurant operations at the leased location until August 31, 2004. When Hai Nam relocated its restaurant (for reasons unrelated to the leaky roof issue), there had been no resolution of the pending roof dispute and the roof was still leaking.

In September 2004, the month following Hai Nam's move, Third Generation, the lessor-owner of the property, replaced the roof that had been installed by B &B, based on its contractor's (Glenn Romero Roofing) determination that the six-year-old roof had multiple flaws in its construction. Specifically, Romero's representative testified at trial that the torch roofing (bitumen membrane) had not been applied to the area surrounding the roof-top air conditioning unit, leaving a perimeter of approximately one foot of exposed roof around the air conditioner. Also, the representative testified that there was no metal flashing or bitumen membrane applied at the intersection of the roof and the walls that extended above the roof line; there was no membrane applied up the sides of those walls that rose above the roof line; and, there was no membrane or flashing installed along the ledge jacks or around the roof jacks. Finally, the representative testified that he observed uncut, bitumen membrane improperly overlapping the roof's ledge in areas.

---

[1]Hai Nam also sued the roofing product manufacturer, GS Roofing Products, Inc., and B & B's liability insurer, Scottsdale Insurance Company. They both were voluntarily dismissed from the action prior to trial.

According to Romero's representative, the absence of the flashing and the application of the bitumen membrane allowed water to collect in areas and seep into various unsealed joints, causing the roof leaks. The representative testified that a new roof was preferred, rather than patching, in order to avoid creating a large number of seams that would compromise the roof's integrity. Third Generation, consequently, paid $13,500.00 to have a new roof installed and then intervened in the action that had been filed by Hai Nam against B & B.

In its suit, Third Generation tracked the language of its former lease agreement with Hai Nam and asserted that in exchange for the $14,400.00 rent credit that had been given, Hai Nam was obligated to make repairs to the leased space. Third Generation conceded that Hai Nam was only obligated to make the repairs that it determined to be necessary to place the premises in a condition satisfactory to its needs. However, Third Generation claimed that because a satisfactorily installed new roof constituted such a repair—since the restaurant could not be opened without the repair being made—Hai Nam, in effect, breached the lease agreement when the roof failed. Moreover, because of this breach, Third Generation stated that it had to pay $13,500.00 for a new roof because of the poor workmanship performed by B & B on the installation of the first replacement roof. Consequently, Third Generation claimed that it was entitled to the recovery of the $12,585.23 sought by Hai Nam in its principal demand against B & B.

The trial court found in favor of Hai Nam on the principal demand, finding that B &B had negligently installed the roof. Having found the contract breached, the court awarded damages in the amount of $12,585.23, the full cost paid to B & B for the installation of the roof. The court then granted Third Generation's intervening claim, but relied on the lease agreement's indemnification clause to

support its ruling, as opposed to Third Generation's rationale. The court reasoned that according to the terms of the lease agreement, Hai Nam was not obligated to perform roof repairs, but that once it undertook repair of the roof, it became obligated "to hold, the Intervenor, Third Generation, harmless from the effects of defective installation." The indemnification clause contained in the lease agreement states:

> 6.5 <u>INDEMNIFICATION</u>: Lessees covenant and agree that it [sic] will protect, save and keep Lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any law or ordinance, whether occasioned by the act, omission or neglect of Lessees to those claiming or holding under Lessees, and that Lessees will at all times protect, indemnify and save and keep Lessor harmless and indemnified against and from all claims, loss, cost, damage or expense arising out of or from any accident or other occurrence in or about the lease premises causing injury to any person or property whomsoever or whatsoever, and that *it will protect, indemnify, save and keep Lessor harmless against and from any and all claims, loss, cost damage or expense arising out of any failure of Lessees, its agent, employees, licensees, contractors or persons and entities claiming or holding under Lessees in any respect to comply with and perform any of the requirements and provisions of this lease.*

(Emphasis added).

The court then ordered Hai Nam to pay to Third Generation the $12,585.23 that it had been awarded as a result of its suit against B & B. Hai Nam has suspensively appealed this judgment, claiming that Third Generation is not entitled to any indemnity because there has been no breach of the lease agreement. Hai Nam contends also that it achieved a satisfactory roof repair because the replacement of the roof allowed the restaurant to be opened and operated, without interruption. Moreover, Hai Nam argues that, despite its defects, the roof that it paid to have installed left Third Generation in possession of a property in significantly better condition than it was in at the beginning of the lease term.

On the main demand, B & B answered the appeal, arguing that the trial court erroneously found that it breached the roofing contract. B & B contends that there was insufficient evidence presented of its failure to adequately perform the work described in the agreed upon work estimate. Alternatively, B & B claims that the damage award was excessive and that the trial court failed to apply the proper standard to determine the amount of any damages that might be due.

III.

## LAW AND ANALYSIS

### *Performance or Breach?*

A contract defines the respective rights and obligations of the parties and is the law between them. *Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole," and any unambiguous terms of that contract must be enforced as written. La.Civ.Code art. 2050; *see also, Brown v. Manhattan Life Ins*. Co., 01-147 (La. 6/29/01), 791 So.2d 74. In other words, when the words of a contract are clear, unambiguous, and do not lead to absurd consequences, the court should not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. In the event the contract is found to contain ambiguous terms, those terms are to be interpreted against the party who furnished the text of the contract. La.Civ.Code art. 2056.

Consequently, the ultimate determination of whether a contract has been breached must begin with an analysis of the terms of that agreement. *Corbello*, 850 So.2d 686. The estimate provided by B & B constitutes the roofing agreement accepted by B & B and Hai Nam. It sets forth an itemized list of work to be

7

performed for the replacement of the roof. The relevant part of the agreed-upon estimate states:

> After checking the roof the solution is to go with [a] new roof, new tapye [sic] of roof material. G. S. roofing products, flintlastic modified bitrmen [sic].[2] This bid is to provide labor and material to do the following work.
>
> 1. Remove all of the gravel.
>
> 2. Check the botton [sic] decking for rotten material.
>
> 3. Clean all debri [sic] from roofing area.
>
> 4. Install a single ply hot tar roof system.
>
> 5. Install a base sheet with hot tar.
>
> 6. Install a flintlastice [sic] modified bitrmen [sic] roof.
>
> 7. Install two roof drain from deck to drain water from roof.
>
> 8. Cleaning and haul all debri [sic] from job site. Material as 12 YR. warranty. Labor as 5 YR. warranty.
>
> <u>    TOTAL COST = $12,585.53</u>

Accordingly, it is clear that the parties agreed that B & B would replace the flat roof with a certain brand of modified bitumen roofing, using hot tar. During the process, B & B expressly stated that it was to check the bottom decking of the existing roof for rotten material and was to also install two new roof drains.

In this case, it is uncontested that the new roof installed by B & B began to leak about a year after its installation. However, despite the subsequent appearance of new leaks approximately one year after the roof's installation, B & B contends that no evidence was provided at trial that it breached the contract by failing to adequately

---

[2]Modified bitumen is an asphalt compound that is applied to roof surfaces. It has been made more water resistant and durable by the addition of polymers. "Flintlastic" is the brand name of a particular modified bitumen membrane on the market.

perform the agreed upon work. We disagree. Louisiana codal law governing a contractor's liability for non-performance of a contract provides that "[i]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in a manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." La.Civ.Code art. 2769; *Austin Homes, Inc. v. Thibodeaux*, 01-1282 (La.App. 3 Cir. 5/8/02), 821 So.2d 10, *writ denied*, 02-2324 (La. 11/15/02), 829 So.2d 436. Moreover, implied in every building contract is the notion that a contractor will perform its work in a good and workmanlike manner, that the work will be suitable for its intended purpose, and that the work will be free of defects in workmanship or materials. *Austin*, 821 So.2d 10.

The record shows that Shane Romero, the representative of Glenn Romero Roofing, offered testimony establishing multiple instances of poor workmanship performed by B &B that either caused or contributed to the recurrence of leaks. B & B's only refutation of Romero's testimony was offered by the employee who prepared the estimate for Hai Nam, Edwin Buteau, Jr. He opined that although the presence of leaks had been established, there was insufficient evidence that B & B's work was responsible for the recurrence of any leaks. Rather, he testified that his company's inspections of the roof after the recurrence of the leaks showed that there was a buildup of condensation on or around the roof-top air conditioning unit and/or its ductwork located below the roof. This, he claimed, was caused by poor or inadequate construction of the building and/or installation of the air conditioning system, for which B & B was not responsible.

In addition, B & B argues on appeal that it satisfied the terms of its contract and no evidence was presented of its failure to perform any of the seven work items set forth in the roofing estimate. Finally, B & B urges that Romero's

9

testimony was unreliable because he was eighteen years old at the time of the trial, possessed minimal formal training in roofing, and although he claimed six years of roofing experience and was in charge of the application of the second roof for Third Generation, all of this prior experience was obtained while he was a minor.

At the outset, we recognize that the trial court heard all of this testimony and made a credibility call as to the weight to be given to the witnesses presented, which this court will not disturb on appeal. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989) (explaining that when findings of fact are based on decisions regarding the credibility of witnesses, respect should be given to those conclusions, because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said). That being said, we find B & B's failure to adequately weatherproof the restaurant to have been substandard conduct and a breach of the contract. The trial court's findings of fact were reasonable in light of the evidence presented and, therefore, we find no manifest error in its ruling.

### *Damages*

The trial court awarded Hai Nam $12,585.23, which constituted the return of the entire roofing contract price. B & B asserts that this award of damages was excessive, and the determination of damages should have been guided by the degree to which it substantially performed the contract. According to La.Civ.Code art. 2769 and cases interpreting it, the proper measure of damages caused by a breach of a contract to build is what it will take to place the entity who contracted for the work in the position it deserved to be in when the project was completed. *See, Austin*, 821 So.2d 10 (citing *Hageman v. Foreman*, 539 So.2d 678 (La.App. 3 Cir. 1989); *Hebert v. McDaniel*, 479 So.2d 1029 (La.App. 3 Cir. 1985)). This necessitates a

10

finding of the cost which would be required to rectify and complete each imperfectly constructed component. *See id.*

In this case, Hai Nam failed to present any detailed information regarding the amount that it would have cost to correct B & B's substandard work. The trial court offered no explanation for awarding the amount aside from stating that it was granting the amount prayed for in Hai Nam's suit. Third Generation offered the only testimony of specific findings of substandard workmanship having been performed by B & B and established that it paid $13,500.00 to have the roof replaced. Although the trial court did not reference this evidence when it rendered its decision, we find its reasonable to infer that the trial court accepted this evidence regarding the cost of necessary repairs to achieve a watertight roofing system.

The trial court possesses vast discretion in determining damages, and the appellate court's role in reviewing this determination is not to decide what it considers to be an appropriate award, but instead, is to review the exercise of discretion by the trier of fact. *See Corbello*, 850 So.2d 686. In effect, the standard for overturning such awards is whether it is so high or so low in proportion to the injury that it shocks the conscience. *See Gravolet v. Fair Grounds Corp.*, 03-392 (La.App. 4 Cir. 7/4/04), 878 So.2d 900. In this case, we believe the trial court heard sufficient evidence to support its award. The evidence presented established that patching would not have been sufficient to repair the roof. Romero testified that the amount of patching needed would have created numerous seams, compromising the soundness of a new roof. Consequently, we affirm the award of damages to Hai Nam in the amount of the return of its full contract cost.

*Indemnity*

Hai Nam asserts that the trial court incorrectly interpreted the indemnification clause in the lease agreement to find that it was obligated to indemnify Third Generation for the failures of the roof installed by B & B. We agree and find that the trial court was legally incorrect in its finding. First, we note that the general rules governing the interpretation of contracts apply in construing indemnity agreements. *See Sovereign Ins. Co., v. Texas Pipe Line Co.*, 488 So.2d 982 (La.1986); *see also, Soloco, Inc. v. Dupree*, 99-1476 (La.App. 3 Cir. 2/9/00), 758 So.2d 851. Most importantly, the language in the indemnity agreement dictates the obligations of the parties. *Jessop v. City of Alexandria*, 03-1500 (La.App. 3 Cir. 3/31/04), 871 So.2d 1140, *writ denied*, 04-1529 (La. 10/01/04), 883 So.2d 991 (quoting *Kinsinger v. Taco Tico, Inc.*, 03-622, p. 1 (La.App. 5 Cir. 11/12/03), 861 So.2d 669, 671). Also, "[t]he question to be considered in determining whether an indemnity agreement is enforceable is 'whether the risk that resulted in the injury was one contemplated by the parties to the contract.'" *Soloco*, 758 So.2d at 855 (quoting *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259 (La.1990)).

In this case, we note that the indemnification agreement, most pertinently, provides that Hai Nam, as lessee, agreed to do the following:

> [P]rotect, indemnify, save and keep Lessor harmless against and from any and all claims, loss, cost damage or expense arising out of any failure of Lessees, its agent, employees, licensees, contractors or persons and entities claiming or holding under Lessees in any respect to comply with and perform any of the requirements and provisions of this lease.

In this case, we reject an interpretation of these facts that would suggest that Third Generation was placed at a risk of a loss, or suffered a loss, due to Hai Nam's noncompliance with the lease agreement. Instead, we find that Hai Nam performed

more than the mutually recognized, estimated $25,000.00 of repair work needed by the leased premises, from which Third Generation has benefitted.

Moreover, whether it be from unfortunate drafting or otherwise, we cannot deny that the express terms of this contract failed to state that Hai Nam was obligated to perform any of the repairs but, rather, stated that "[l]essees agree to make the repairs which will satisfy their needs and place the premises in a condition satisfactorily [sic] *to Lessees*." (Emphasis added). The terms are clear and unambiguous and must be given their commonsense meaning. *See Sovereign*, 488 So.2d 982.

In this regard, the record reflects testimony from Linda Yang on behalf of Hai Nam. She stated that the roof was placed in a far better condition than it was prior to their occupation of the premises and that, although certain leaks reappeared, a satisfactory roof condition was achieved for Hai Nam's purpose of running a restaurant. We reject Third Generation's argument that, by virtue of Hai Nam filing suit to pursue the full enforcement of their contract with B & B, Hai Nam was admitting to a breach of the lease agreement, i.e., the failure to obtain a satisfactory repair of the roof. Indemnity, in its most basic sense, is due when fairness requires that one person bear the total responsibility for an injury or loss. *See Vaughn v. Franklin*, 00-291 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, *writ denied*, 01-1551 (La. 10/5/01), 798 So.2d 969. Additionally, "[t]he basis for indemnity in the civil law is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility." *Klumpp v. XYZ Ins. Co.*, 547 So.2d 391, 393 (La.App. 3 Cir.), *writ denied*, 551 So.2d 1322 (La.1989). Considering this, we do not find that the circumstances triggering indemnification, according to the express terms of the lease agreement, occurred and, therefore, we

reverse the trial court's finding of Hai Nam's breach of the lease agreement and reverse its award of damages to Third Generation.

IV.

**CONCLUSION**

The judgment rendered in favor of Hai Nam Chinese Restaurant and against B & B Construction, Inc., is affirmed. The judgment on the intervention in favor of Third Generation Properties, L.L.C., is reversed. Costs of this appeal are assessed equally between B & B Construction, Inc. and Third Generation Properties, L.L.C.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**