# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-879

MARK PATOUT

VERSUS

UNDERWRITERS AT LLOYD'S

LONDON, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPLICATION FOR SUPERVISORY WRITS FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-19543
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of  John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**WRIT DENIED.**

**Gremillion, J., dissents and assigns written reasons.**

R. Todd Musgrave
Theresa S. Anderson
Musgrave, McLachlan & Penn
1515 Poydras Street, #2380
New Orleans, LA 70112
(504) 799-4300
COUNSEL FOR DEFENDANT-APPLICANT:
    Allen J. Patout

**Valerie Theng Matherne**
**Troy N. Bell**
**James M. Matherne**
**Daniel R. Estrada**
**Jené Liggins**
**Courington, Kiefer & Sommers, L.L.C.**
**616 Girod Street**
**New Orleans, LA 70130**
**(504) 524-5510**
**COUNSEL FOR DEFENDANT-RESPONDENT**
     **Harbor Freight Tools USA, Inc.**

**PICKETT, Judge.**

The relator-defendant in cross-claim, Allen J. Patout ("Allen Patout"), seeks supervisory writs from the judgment of the trial court, which overruled his Exception of No Cause of Action.

## STATEMENT OF THE CASE

This case arises from an accident in which it is alleged that the Plaintiff, Mark Patout, was inside an elevator located on property owned by Allen Patout when the cable holding the elevator snapped, causing the elevator to fall. Mark Patout filed suit against his brother, Allen Patout, for injuries he sustained as a result of the failure of the elevator. Mark Patout filed his Petition for Damages on November 20, 2015, naming as defendants Allen Patout, as the property owner; his insurer, Underwriters at Lloyd's, London; Pittsburgh Automotive as the manufacturer and seller of the hoist system at issue; Harbor Freight Tools USA, Inc. ("Harbor Freight"), as the manufacturer and seller of the hoist system at issue; and unknown insurers. The petition indicates that Allen Patout built the elevator himself, using a hoist system manufactured and sold by Pittsburgh Automotive and Harbor Freight.

Mark Patout filed a First Amending Petition for Damages to identify more specifically Certain Underwriters at Lloyd's, London Subscribing to Certificate No. ARK-PL-H2382 ("Underwriters at Lloyd's"), as Allen Patout's insurer. Mark Patout then filed a Second Amending Petition for Damages to assert additional allegations against Harbor Freight.

Harbor Freight filed an Answer and Affirmative Defenses to Mark Patout's Original, First, and Second Amending Petitions for Damages, Cross-Claim, and Jury Demand. As plaintiff in cross-claim, Harbor Freight named Allen Patout and

Underwriters at Lloyd's and is seeking contribution and/or indemnification for any judgment rendered against it.

Allen Patout filed an Exception of No Cause of Action and/or Motion to Strike Cross-Claim in response to Harbor Freight's Cross-Claim. Underwriters at Lloyd's filed a Motion to Adopt the Exception of No Cause of Action. The exception was heard by the trial court on August 31, 2016, and the trial court denied the exception.

## SUPERVISORY RELIEF

A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. In cases in which a peremptory exception has been overruled by the trial court, the appellate court appropriately exercises its supervisory jurisdiction when the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved. *Charlet v. Legislature of State of La.*, 97-0212 (La.App. 1 Cir. 6/29/98), 713 So.2d 1199, 1202, *writs denied*, 98-2023, 98-2026 (La. 11/13/98), 730 So.2d 934. In such instances, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981) (per curiam).

## ON THE MERITS

**Exception of No Cause of Action**

The purpose of the peremptory exception of no cause of action is to determine the legal sufficiency of the petition. *Venture Assocs. v. Transportation Underwriters of La.*, 93-539 (La.App. 3 Cir. 03/02/94), 634 So.2d 4, *writ denied*,

(La. 7/1/94), 639 So.2d 1165. "The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to plaintiff if those factors are proved at trial." *Id*. at 6. "When it can reasonably do so, the court should maintain a petition as to afford the litigant an opportunity to present his evidence." *Klumpp v. XYZ Ins. Co.*, 547 So.2d 391, 393 (La.App. 3 Cir.), *writ denied*, 551 So.2d 1322 (La.1989).

Allen Patout argues that Harbor Freight does not have a cause of action recognized under Louisiana law for contribution or indemnity against its co-tortfeasors. Mr. Patout cites to La.Civ.Code art. 2324, which was amended in 1996 to eliminate solidary liability, making nonintentional tortious acts joint and divisible, with each joint tortfeasor liable only for its own degree of fault, except where tortfeasors conspire to commit an intentional or willful act.[1] Allen Patout argues that there have been no claims of any intentional or willful act made in this matter, nor is there an allegation of any indemnity agreement.

In response, Harbor Freight contends that it has a viable cause of action for contribution and indemnity, as any fault for Mark Patout's accident stems from Allen Patout's negligence, not Harbor Freight's. The Petition for Damages and its Amendments allege that Mark Patout's injuries are a direct result of the negligence

---

[1] La.C.C. art. 2324 states:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> B. If liability is not solidary pursuant to Paragraph A, the liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

of Allen Patout and that Allen Patout had full and total control of the elevator and installed it. Harbor Freight argues that under *Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99), 739 So.2d 183, this is sufficient for a cause of action for contribution and indemnity.

Based upon the allegations made by Mark Patout and Harbor Freight, Harbor Freight has a cause of action for contribution and/or indemnity. It it is possible that Allen Patout is at fault for the injuries suffered by Mark Patout when the homemade elevator failed, considering Harbor Freight's allegation that the equipment it sold was used in a manner for which it was never intended. Harbor Freight stated this cause of action in its Answer and Affirmative Defenses to Mark Patout's Original, First, and Second Amending Petitions for Damages, Cross-Claim, and Jury Demand.

**Analysis**

Under Louisiana law, a party not at fault that incurs liability due solely to the fault of others is entitled to seek recovery from the party at fault for implied or passive indemnity. *Nassif*, 739 So.2d 183.

> It has long been held in Louisiana that a party not actually at fault, whose liability results from the fault of others, may recover by way of indemnity from such others. The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative.

*Id*. at 186.

In *Nassif*, a defendant home builder, Coast, filed a Third-Party Demand for contribution and indemnity from an engineering firm, Krebs, after being sued in redhibition by the plaintiff homeowner. The trial court found that the home at issue contained defects, that Krebs negligently performed its engineering services and that all the damages suffered by the plaintiff and Coast were caused by Krebs.

4

The Louisiana Supreme Court affirmed the trial court's judgment awarding Coast indemnity against Krebs. The supreme court noted that a party not actually at fault, whose liability results from the fault of others, may recover through indemnification.

Similarly, Harbor Freight asserted the complete fault of co-defendant, Allen Patout, for his misuse of the automotive engine hoist. Based upon the allegations made by Mark Patout, we find that Harbor Freight has a cause of action for contribution and/or indemnity, because it is possible that Allen Patout misused, failed to properly install, or failed to comply with the warnings against using the automotive joist manufactured by Harbor Freight to lift people.

Harbor Freight also cites to *Klumpp*, 547 So.2d 391, in support of its argument that even if the plaintiff alleges negligence on the part of the indemnitee, this does not preclude a cause of action for indemnification. In *Klumpp*, survivors of a pipeline owner's employee, who died as a result of an accident with the pipeline, brought a negligence and strict liability suit against the construction company, its insurer, and the manufacturer. The construction company filed a demand for indemnity against the manufacturer, and in turn, the manufacturer filed an exception for no cause of action. The court in *Klumpp* stated, "Indemnity is due when fairness requires that one person bear the total responsibility for an injury." *Id.* at 393. The court held that the manufacturer's exception of no cause of action should have been overruled, as the construction company's petition alleged that the accident was due primarily to the acts of the manufacturer and that the construction company was only technically or constructively at fault. The court explained:

> [Manufacturer] Deere's exception of no cause of action was based on the mistaken proposition of law that the allegations of the original plaintiffs' petition determine whether

5

a party may seek indemnity from a third person. Thus, according to Deere, if the original plaintiffs in the pleadings make an allegation that the third party plaintiff is negligent, the third party plaintiff is not entitled to indemnity as a matter of law… However, this is clearly not the law of this state.

*Id*. at 394. (citation omitted). The court further explained that "a person who is held liable vicariously or passively for the tort of another is due indemnity from the culpable tortfeasor. *Robinson v. La. Dept. of Transp. and Dev.*, 454 So.2d 257 (La.App. 1st Cir.), *writ denied*, 458 So.2d 122 (La.1984)." *Id*. at 394.

In response, Allen Patout argues that the jurisprudence cited by Harbor Freight, including *Klumpp*, is outdated, and therefore, does not support Harbor Freight's cause of action. However, Mr. Patout does not cite to any subsequent jurisprudence that overrules or disagrees with these decisions. Furthermore, this court has cited to *Klumpp* in two more recent cases, *Hai Nam Restaurant Partnership v. B&B Const. of New Iberia*, 06-729 (La.App. 3 Cir. 11/2/06), 942 So.2d 97, *writ denied*, 06-2751 (La. 1/26/07), 34 So.3d 261, and *Hesse v. Champ Service Line*, 02-284 (La.App. 3 Cir. 10/2/02), 828 So.2d 687, on the issues of contribution and indemnity.

In *Hesse*, the plaintiffs filed a products and premises liability based suit against several defendants after an employee was electrocuted while grabbing a vehicle's water pump. The plaintiffs based their claim against the defendants on strict liability and/or negligence. The first claim involved the manufacture and distribution of the alleged defective product by the product manufacturer, and the second claim concerned the alleged liability of the remaining defendants under premises liability. The lessee brought a third-party demand against the product manufacturer for indemnity based upon strict liability and/or negligence. The Third Circuit cited to *Nassif*, 739 So.2d 183, when considering the indemnity claim:

> Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed. It is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss. The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement. An implied contract of indemnity arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to the imposed.

*Id*. at 690 (Citations omitted). Similarly, Harbor Freight has stated a cause of action discharging liability to Allen Patout.

Allen Patout further relies on *Beauregard v. State of La, through the DOTD*, 09-271 (La.App. 3 Cir. 10/07/09), 21 So.3d 442, in arguing that a third-party demand for indemnification is not recognized under Louisiana law unless there is an agreement to be solidarily bound or if there is a joint intentional act. However, Allen Patout's reliance is misplaced. In *Beauregard*, the plaintiff filed suit against the State after she fell due to an alleged defect in a sidewalk. The State filed a third-party demand against the City, asserting that, should it be found liable, it should be indemnified by the City, because the City owned and was responsible for maintaining the sidewalk. This court granted the City's exception of no cause of action, holding that the State advanced no valid argument that it was due indemnification. The State argued that the City was the owner of and bore responsibility for the upkeep of the sidewalk such that it would be unjustly enriched if the State was found liable and had to pay damages. This can be distinguished from the present case, because in *Beauregard*, the State alleged unjust enrichment, without making any allegations of complete exoneration from

7

fault. Comparatively, Harbor Freight has argued that they are completely without fault; thus, Harbor Freight may be due indemnity from Allen Patout.

Considering the facts as alleged in the petition and the relevant law, we find that the trial court did not err in denying the exception of no cause of action. Accordingly, the application for supervisory writs is denied.

**WRIT DENIED.**

**GREMILLION, Judge, dissents.**

I dissent from the denial of the application for writs filed by Defendant/Defendant in Cross Claim, Mr. Allen J. Patout.

The petition in this matter alleges that Mr. Patout installed and "maintained full and total control of the elevator," "installed a dangerous and defective electric hoist," and other acts of negligence. The petition further alleges that Defendant/Cross-Claimant, Harbor Freight Tools USA, Inc., (Harbor Freight) manufactured and sold the hoist.

The specific allegations against Harbor Freight were that it was liable for:

A. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in construction and composition;

B. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in its design;

C. Designing, manufacturing, assembling, marketing and selling a product which was dangerously defective and unreasonably dangerous in its failure to have adequate instructions and/or warnings;

D. Other acts of negligence, fault, and strict liability which may be shown through discovery or at trial; [and,]

E. Generally, the failure of this defendant to act with required degree of care commensurate with the existing situation.

Allegations (A), (B), and (C) carefully track the language of the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51, et seq., and, specifically, three of the four exclusive theories of liability under which a product can be deemed unreasonably dangerous for purposes of establishing a manufacturer's liability under the Act.[1]

In his "Second Amending Petition for Damages," the plaintiff made more specific allegations against Harbor Freight to identify why the electric hoist was unreasonably dangerous in construction or composition, in design, and in failing to adequately warn.

Harbor Freight then answered and asserted thirty-six affirmative defenses, as well as its cross claim against Mr. Patout and his insurer, in which it alleged that it is entitled to indemnity and contribution from them for any liability for which it might be found under the plaintiff's demands in strict liability. Mr. Patout and his insurer filed their exception of no cause of action that asserted that Harbor Freight has no cause of action for indemnity or contribution. The trial court denied this exception.

In non-intentional tort cases, "liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person." La.Civ.Code art. 2324(B). The Louisiana Supreme Court and this court have addressed this situation.

---

[1] The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory not set forth [in the Act]." La.R.S. 9:2800.52. The four theories of liability set forth in the LPLA are: unreasonably dangerous in construction or composition, La.R.S. 9:2800.55; unreasonably dangerous in design, La.R.S. 9:2800.56; unreasonably dangerous because of inadequate warning, La.R.S. 9:2800.57; and unreasonably dangerous because of nonconformity to express warranty, La.R.S. 9:2800.58.

2

In *Dumas v. State, through Dep't of Culture, Recreation & Tourism*, 02-563 (La. 10/15/02), 828 So.2d 530, the plaintiffs' spouse and father had been killed in a bicycle accident at Chemin-a-Haut State Park near Bastrop, Louisiana. The State asserted that the alleged malpractice of the responding health care providers caused or contributed to the victim's death and asserted this as an affirmative defense. Plaintiffs sought to strike these allegations, and the trial court agreed. The Louisiana Supreme Court held that the State was entitled, under La.Civ.Code art. 2324, to have the fault, if any, of the health care providers assessed by the jury.

The Supreme Court took note of the legislative history of La.Civ.Code arts. 2323 and 2324:

> Prior to 1980, Louisiana courts applied a judicially-created rule based on common-law precedents under which a plaintiff's contributory negligence barred any recovery in a negligence action. *Rozell v. Louisiana Animal Breeders Co-op., Inc.,* 496 So.2d 275, 279 (La.1986); *Bell v. Jet Wheel Blast,* 462 So.2d 166, 169 (La.1985). The first Louisiana case that clearly adopted the doctrine of contributory negligence was *Fleytas v. Pontchartrain Railroad Co.,* 18 La. 339 (1841), which was decided at a time when there was no organized body of civilian doctrine on the issue of comparative fault. *Bell,* 462 So.2d at 169. Effective August 1, 1980, the legislature amended La. C.C. art. 2323 to eliminate the doctrine of contributory negligence and to provide a procedure by which a plaintiff's negligence would operate only to reduce his recovery in proportion to his fault. *Murray v. Ramada Inns, Inc.,* 521 So.2d 1123, 1132 (La.1988); *Bell,* 462 So.2d at 170. As amended by Act No. 431 of 1979, La. C.C. art. 2323, entitled "Computation of damages," provided:
>
>> When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
>
> The amendment, the effect of which was to prevent courts from applying any rule more damaging to plaintiff's case than comparative negligence, *Bell,* 462 So.2d at 170, was beneficial to plaintiffs in that

3

it increased the probability that they would be compensated, at least in part, for their injuries.

Act No. 431 of 1979 also revised La. C.C. art. 2324 to reaffirm the principle of solidary liability among joint tortfeasors, a principle that had been a part of Louisiana's civil tradition for more than 150 years. *See Touchard v. Williams,* 617 So.2d 885 (La.1993). As amended by this Act, La. C.C. art. 2324, entitled "Liability for assisting or encouraging wrongful act," provided:

> He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.

> Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.

One of the underlying policies of solidary liability, as well as tort law as a whole, is victim compensation. *Touchard,* 617 So.2d at 889. The imposition of the principle of solidarity among joint tortfeasors " 'espouse[s] a theory that it is better to allocate damages to the injurers, even in greater portions than their respective degrees of fault, than have victims suffer a reduced recovery.' " *Id.* at 890 (quoting M. Kevin Queenan, *Civil Code Article 2324: A Broken Path to Limited Solidary Liability,* 49 La. L.Rev. 1351, 1356 (1989)). That is, the modern justification for solidary liability is founded on the belief that the innocent plaintiff should have the opportunity to obtain full compensation from any person whose fault was an indispensable factor in producing the harm. *Touchard,* 617 So.2d at 890. Thus, the primary effect of solidary liability is that any tortfeasor may be made to pay the judgment in full for other defendants who are insolvent, unknown, or absent. *Id.*

In 1987, the legislature confronted the problem of compelling solvent defendants who were not 100% at fault to pay for 100% of plaintiffs' damages by enacting compromise legislation that attempted to balance the competing interests of judgment creditors and judgment debtors. *Id.* By Act No. 373 of 1987, the legislature amended La. C.C. art. 2324, newly entitled "Liability as solidary or joint and divisible obligation," to provide:

4

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as provided in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.

This amendment balanced the risks of insolvent, incapable of paying, unknown, and absent tortfeasors among plaintiffs and known, solvent defendants. *Touchard,* 617 So.2d at 892.

In a case arising prior to the 1987 amendment, *Weber v. Charity Hosp. of La. at New Orleans,* 475 So.2d 1047 (La.1985), this court was presented with the issue of whether a compromise with and release of an initial tortfeasor discharged a hospital and a blood supplier that gave the victim unwholesome blood during treatment for injuries she sustained in the original accident from any obligation relating to the blood transfusion. To answer this question, we were required to determine whether the original tortfeasor was solidarily liable for the damages resulting from the transfusion since the release of one solidary obligor discharged other solidary obligors. We concluded that an initial tortfeasor may be liable for the injuries he directly caused to the tort victim as well as for the victim's additional suffering caused by inappropriate treatment by a health care provider who treated the original injuries and characterized this inquiry as one of legal causation which should be addressed under a duty-risk analysis. We then determined that the initial tortfeasor's negligence was a cause in fact of the injuries the victim received as a result of inappropriate medical care, and that the initial tortfeasor's duty to refrain from negligently harming others encompassed the risk that the

victim's injuries might be worsened by the treatment for those injuries. Consequently, we found that, as a matter of policy, the initial tortfeasor's negligence was the legal cause of the injuries arising from the subsequent medical treatment and the initial tortfeasor could therefore be held liable for any damages resulting from that treatment. Finally, we concluded that the initial tortfeasor's liability for any damages arising out of the medical treatment was solidary with any liability found to exist on the part of the hospital and the blood supplier.

After the 1987 amendment of Article 2324, an issue arose concerning the effect of the amendment on this court's holding in *Weber.* In *Lambert v. United States Fidelity & Guar. Co.,* 629 So.2d 328 (La.1993), a per curiam opinion, we determined that the amendment reducing solidarity among solidary obligors to only the extent necessary for the tort victim to recover fifty percent of his recoverable damages did not change the principle announced in *Weber* that the initial tortfeasor could be held liable for any damages arising out of medical treatment necessitated by the original accident. We stated that the initial tortfeasor's liability was based on the fact that he was the legal cause of 100% of the victim's harm as well as on the imposition of a solidary obligation between joint tortfeasors. We determined that the 1987 amendment to La. C.C. art. 2324 did not change the *Weber* principle, in part because an apportionment of fault between the original tortfeasor and the subsequently treating health care provider could result in the victim receiving less than the full amount of the judgment. We went on to note, however, that even under the *Weber* rationale that remained valid despite the 1987 amendment, the original tortfeasor would not ultimately bear the cost of the entire tort judgment because he had the right to seek contribution from the health care provider. We explained this result relieved the victim of having to prove which of the two tortfeasors caused what injuries and, instead, properly placed this burden on the original tortfeasor.

Several years after this court's opinion in *Lambert,* the legislature again amended La. C.C. arts. 2323 and 2324(B), this time to abolish solidary liability among non-intentional tortfeasors and to place Louisiana in a pure comparative fault system. Amended by Act 3 of the 1st Ex.Sess. of 1996, La. C.C. art. 2323, entitled "Comparative fault," now provides:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a

person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

In addition to Article 2323, Act 3 also amended La. C.C. art. 2324 to provide:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

*Id.* at 532-36. (Footnotes omitted).

The court went on to note that the 1996 amendment abolished solidary liability among joint tortfeasors. The basis for indemnity and contribution among joint tortfeasors was the solidary nature of their liability prior to 1996, as was clearly evidenced by the 1979 amendment's language "reserving to all parties their

7

respective rights of indemnity and contribution." 1979 La.Acts No. 431. This language was removed from Article 2324 by 1987 La.Acts No. 373.

The abolition of solidary liability among joint tortfeasors abolished demands for indemnity and contribution among them absent an intentional tort or an agreement for indemnity. "[La.Civ.Code art. 2324(B)] abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to [La.Civ.Code art.] 2323." *Dumas*, 828 So.2d at 537.

This court, in *Beauregard v. State, through Dep't of Transp. and Dev.*, 09-271 (La.App. 3 Cir. 10/7/09), 21 So.3d 442, affirmed the trial court's grant of the State's third-party demand for indemnity against the City of Alexandria. The plaintiff was allegedly injured when she fell due to a three-inch elevation difference in sections of sidewalk. She sued the Department of Transportation and Development, which then field its third-party demand against the city, arguing that maintenance of sidewalks was the city's responsibility. We recognized the abolition of solidary liability as the basis for non-contractual indemnity and affirmed the trial court.

The majority relies upon two cases that are clearly distinguishable from the present matter. The first is *Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99), 739 So.2d 183. This case pitted a homeowner against her builder under a theory of redhibition for a failed foundation. The builder, in turn, filed a third-party demand for indemnity against the engineering firm that designed the foundation. Because the builder was "only technically or constructively liable for [plaintiff's] loss," the builder was subjected to damages itself as the result of the engineering firm's negligence and was entitled to "restitution" from the engineering firm, including attorney fees. *Id.* at 187. *Nassif* involved a defendant and a third-party defendant,

8

one of whose liability arose in redhibition and the other from tort. Either could have been sued by the plaintiff and found liable for the whole of her damages. In the present matter, both Mr. Patout and Harbor Freight are exposed to liability only in tort. Each can only be found liability for the degree of fault assessed by the jury at trial.

The second case relied upon by the majority is *Klumpp v. XYZ Ins. Co.*, 547 So.2d 391 (La.App. 3 Cir.), *writ denied*, 551 So.2d 1322 (1989). It should be noted first that *Klumpp* involved a pre-1987 incident; thus, the 1979 version of La.Civ.Code art. 2324 applied, and demands for indemnity and contribution even among joint tortfeasors was statutorily authorized. The underlying case involved a reputed natural gas pipeline. The construction company whose backhoe was excavating at the site filed a demand for indemnity against the manufacturer of the equipment, alleging that it was defective. This court noted that only one whose liability is passive or vicarious, and who is free from fault "and has discharged a debt that should be paid wholly by the indemnitor" is entitled to indemnity. *Id.* at 394. In the present matter, there is no vicarious or passive liability that can be found against Harbor Freight. The *Klumpp* case does not present a matter analogous to the present and was superseded by 1987 La.Acts No. 373.

In conclusion, in a non-intentional tort case, there no longer exists solidary liability; therefore, in the absence of an agreement, there is no indemnity among joint tortfeasors. Here, there is no allegation that any indemnity agreement exists between Mr. Patout and Harbor Freight. If a jury finds that Harbor Freight manufactured the hoist and that the hoist was unreasonably dangerous by construction or composition, in design, or in Harbor Freight's failing to adequately warn user, the jury will assign Harbor Freight a percentage of fault under the LPLA. On the other hand, if the jury finds that Mr. Patout utilized the hoist in a

manner that was not reasonably anticipated or that the characteristic that rendered the hoist unreasonably dangerous did not result from a reasonably anticipated alteration, it must find that Harbor Freight is not liable to the plaintiff. La.R.S. 9:2800.54. I would reverse the trial court, enter judgment maintaining the exception of no cause of action, and remand the matter to allow Harbor Freight the opportunity to cure the defects in its cross claim by amendment in accordance with the principles of law set forth above.